240 F.Supp. 475 (1965)
Petition of Robert B. CURTIS, William L. Clay, Lucien Richards, Rev. Charles Perkins and Norman Seay for a writ of habeas corpus.
Petition of Michela GRAND, Daniel Pollock and James Peake, Jr., for a writ of habeas corpus.
Nos. 64 C 52(3), 64 C 54(3).
United States District Court E. D. Missouri, E. D.
March 31, 1965.
*476 *477 Robert E. Wilson, Jr., Robert L. Witherspoon, Wyvetter H. Younge, Jos. S. McDuffie, Clyde S. Cahill, Jr., Charles R. Oldham, Emanuel Williams, Margaret B. Wilson, Robert Ratermann, St. Louis, Mo., for petitioners.
Eugene P. Freeman, Associate City Counselor, and Conway B. Briscoe, Jr., Asst. City Counselor, St. Louis, Mo., for respondent.
REGAN, District Judge.
These matters are before the Court following the remand of these actions by the Court of Appeals for the Eighth Circuit. These petitions for writs of habeas corpus arise out of contempt proceedings in the Circuit Court of St. Louis County, Missouri. Each of the petitioners was found guilty of criminal contempt for violating an injunction issued by that Court.
The dispute which is the background of the injunction began when petitioner Curtis, as "chairman of CORE" wrote a letter dated August 14 to the Jefferson Bank and Trust Company, hereinafter referred to as "the Bank", which stated:
"As a result of our conversation last week and the report given by Rev. Charles Perkins and me, the St. Louis Committee of Racial Equality voted to take direct action against Jefferson Bank if four full time Negroes are not hired in clerical or teller positions within two weeks."
The Bank replied August 27 rejecting the demand and stating that it did not need four additional employees at that time, did not have four qualified Negro applicants, and that it would not discharge other employees to open such positions. On August 29th the Bank applied to the *478 Circuit Court for a temporary restraining order in an action entitled "Jefferson Bank and Trust Company, a corporation, vs. Robert B. Curtis, William L. Clay, Charles R. Oldham and Marian Oldham, Lucien Richards, Richard Daly, Walter Hays, Rev. Charles Perkins, Norman Seay, Herman Thompson, Melvin West, Individually and as representatives of a class known as St. Louis Committee of Racial Equality." The Court issued an order on August 30 which required the defendants to "desist and refrain from" the following actions until hearing on the merits:
"(a) Physically hindering, obstructing, interfering with, delaying, molesting or harrassing other persons desiring to enter plaintiff's banking premises, from entering said premises for the purpose of conducting their business with plaintiff or for any other purpose.
"(b) Congregating or loitering individually or in groups inside plaintiff's banking premises and therein engage in any acts or conduct of whatsoever character which interferes with, intimidates, harasses, hinders and annoys plaintiff's employees in the performance of their duties or other persons in the conduct of their business with plaintiff or which in any way interferes with the proper and normal conduct of plaintiff's banking business.
"(c) Physically hindering, obstructing, interfering with, intimidating or in any other manner preventing customers of plaintiff and other members of the public from having the usual and customary access to teller's windows located in plaintiff's banking premises or access to any other department or portion of said banking premises wherein plaintiff conducts its banking business."
Hearing was set on the restraining order for 10:00 A.M. August 30, and at the hearing attorneys named as defendants entered their appearance in behalf of the St. Louis Committee of Racial Equality and certain of the defendants individually.
On August 30, at about 4:00 P.M., petitioners in case No. 64 C 52 hereafter referred to as "Curtis et al," and other persons took part in a demonstration at the Bank. First petitioners and persons acting with them and under their direction engaged in peaceful picketing until about 5:10 P.M. when a great number stood in front of the doors, entered the bank, sang freedom songs, and sat on the floors. Pursuant to petition of the Bank, based on this demonstration, a citation of contempt was issued and executed on August 31, and hearing to show cause was set for September 3. The hearing was postponed several times until September 23rd when trial commenced and continued until October 3. Judgment was entered October 24th.
The petitioners in case number 64 C 54, hereinafter referred to as "Grand et al", took part in a demonstration at the Bank on October 7, 1963. The contempt proceedings was filed in the original action for a temporary restraining order by motion for the issuance of attachment for contempt. The court ordered petitioners and others attached, and appointed attorneys to present evidence of contempt. Trial was set for October 10th, continued until October 14, concluded October 16th and judgment was rendered October 24th.
Petitioners made application for a writ of habeas corpus to the St. Louis Court of Appeals. That Court extensively reviewed the contempt proceedings and quashed the writs of petitioners in these actions and discharged other applicants. Subsequently, petitioners sought habeas corpus relief from the Supreme Court of Missouri, which Court denied the writs per curiam, adopting the findings and conclusions of the St. Louis Court of Appeals. This Court ordered dismissal of the applications for writs for habeas corpus. On appeal of that ruling the Court of Appeals for the Eighth Circuit, *479 331 F.2d 675, remanded for this court "to consider whether the issues sought to be raised are such as to call for a hearing under Townsend v. Sain [372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963)]." The criterion for hearings on applications for writs of habeas corpus are stated on pages 312 and 313 of 372 U.S., on page 756 of 83 S.Ct.:
"State prisoners are entitled to relief on federal habeas corpus only upon proving that their detention violates the fundamental liberties of the person, safeguarded against state action by the Federal Constitution. * * *
"Therefore, where an applicant for a writ of habeas corpus alleges facts which, if proved, would entitle him to relief, the federal court to which the application is made has the power to receive evidence and try the facts anew.
"We turn now to the considerations which in certain cases may make exercise of that power mandatory. The appropriate standard  which must be considered to supersede, to the extent of any inconsistencies, the opinions in Brown v. Allen [344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469]  is this: Where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding. In other words a federal evidentiary hearing is required unless the state-court trier of fact has after a full hearing reliably found the relevant facts. * * *
"We hold that a federal court must grant an evidentiary hearing to a habeas applicant under the following circumstances: If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing."
The returns and answers thereto in the two cases are practically identical and petitioners filed the same brief in both cases as did the respondent. The briefs on either side are lacking in enlightenment many of the issues being presented or denounced with no cited support in the facts or the law.
The petition for a writ of habeas corpus and answer to the return in Curtis, et al raises nine grounds, and the petition and answer to the return in Grand, et al suggests ten grounds for issuance. Eight of the grounds asserted in each case are identical or substantially the same. They are that the petitioners have been denied the equal protection of the law and due process of law under the Fourteenth Amendment and that the guarantees of the First, Sixth, Eighth, and Tenth Amendments to the Constitution of the United States and Sections 10, 18(a), 20 and 21 of Article I, Constitution of Missouri, V.A.M.S., have been denied them in the following respects:
(1) The Supreme Court of Missouri failed to resolve the conflict between the opinions of the Springfield and St. Louis Courts of Appeal as to the correct interpretation of Supreme Court Rule 92.09, V.A.M.R. and Section 526.070 RSMo (1959) V.A.M.S., as to the requirements of an indemnity bond.
(2) The courts' interpretation of Section 526.070 RSMo 1959, V.A.M.S., abridged the obligation of contract.
(3) The trial court used a temporary restraining order to enforce against petitioners the racially discriminatory hiring policy of a federally insured bank engaged *480 in substantial interstate commerce where the terms and conditions of employment were involved.
(4) The Court ignored jurisdictional requirements throughout these proceedings.
(5) Petitioners in Grand et al separate from their contention numbered (4) herein, assert that the court ignored jurisdictional requirements in that they were given no opportunity to purge themselves and no time to adequately prepare their defense.
(6) Petitioners in Grand et al claim to have been specifically excluded from the restraining order.
(7) Sections 476.110 to 476.140 RSMo 1959, V.A.M.S., and Supreme Court Rules 35.01 and 92.15 RSMo 1959, V.A.M.R., were construed in such a way that petitioners were tried for civil contempt and found guilty of criminal contempt.
(8) The Court applied Section 56.110 RSMo (1959) V.A.M.S., and the public policy of Missouri so as to permit conviction and punishment as for criminal contempt when prosecuted by an interested person and a private party litigant.
(9) The Court failed to remove the "special prosecutor" after evidence of misconduct.
(10) Petitioners have been effectively denied a review by appeal because an action which was originally a civil action was converted to a criminal contempt action.
(11) The sentencing court imposed excessive fines and sentences.
Issues (1) and (2).
(1) The Supreme Court of Missouri failed to resolve conflict in opinions between Springfield and St. Louis Courts of Appeals as to the correct interpretation of Supreme Court Civil Rule 92.09, V.A.M.R.,[1] and Section 526.070 V.A.M.S.[2] which prescribes the requirements of an indemnity bond.
(2) That the courts' interpretation of Section 526.070 V.A.M.S., 1959, which sets the requirements of an indemnity bond for court jurisdiction in an injunction proceeding, abridged the obligation of contract.
These issues do not raise questions of fact subject to proof. The aim of the contentions is to establish that the Circuit Court lacked jurisdiction to issue the injunction upon which the contempt citation was based because the indemnity bond, prerequisite to jurisdiction did not meet the statutory requirements. The St. Louis Court of Appeals held that the bond, being a statutory bond, must be read to include the terms of the statute. It, therefore, did not find it necessary to rule, as did the Springfield Court of Appeals in Ex parte Dillon, 96 S.W.2d 1095, on the point of whether the designation of the parties to whom or in whose favor the bond was executed was properly worded. By adopting the Court of Appeals opinion the Supreme Court of Missouri also so ruled. The bond was held to be valid and thus, to support the jurisdiction *481 of the enjoining court. By contention (1) petitioners seek a legal conclusion from this Court that the due process or equal protection guarantees require the Supreme Court of Missouri to construe the statute even though it is purely academic as to this case and unnecessary to answer the jurisdictional issue. The contention is without merit.
In contention (2), while petitioners cite the Federal Constitution, they are not actually concerned with fundamental contract rights, but rather with the same point as is raised in ground (1). The jurisdictional foundation for the injunction cannot be assailed in an action of this kind by this circuitous route.
(Issue 3) The trial court used a temporary restraining order to enforce against petitioners the racially discriminatory hiring policy of a federally insured bank engaged in substantial interstate commerce where the terms and conditions of employment were involved.
Petitioners also attack the jurisdiction of the Circuit Court to issue a temporary restraining order by this contention. There is no factual dispute as to the nature of CORE's demand or the Bank's refusal to hire four Negroes.
Petitioners cite New Negro Alliance v. Sanitary Grocery Co., 303 U.S. 552, 58 S.Ct. 703, 82 L.Ed. 1012 (1938) and the National Labor Relations Management Act, Title 29 U.S.C.A. § 152(9).[3] In the New Negro Alliance case an association of Negroes requested a grocery company to hire Negroes as clerks in certain of its stores. It made no demands as to number or time. It then proceeded to place a picket in front of one of the stores carrying a sign stating "Do Your Part: Buy Where You Can Work: No Negroes Employed Here." The Supreme Court held that the dispute was a "labor dispute" within the meaning of the Norris-LaGuardia Act, 29 U.S.C.A. § 113(a) and a federal court could not enjoin the picketing.
The facts of that case are distinguishable from the facts in the instant case. In that case a lawful demand was made. In this case the demand of CORE to hire four Negroes within two weeks flies in the face of Section 296.020 V.A.M.S. which defines unlawful employment practices in the State of Missouri to include:
"It shall be an unlawful employment practice: (1) For an employer, because of the race, creed, color * * to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions, or privileges of employment."
By their demand, claiming to seek compliance with the Act, the petitioners also sought its violation. What might otherwise be a labor dispute between a union and an employer ceases to be a "bona fide labor dispute" when an unlawful demand is made. Lystad v. Local Union No. 223 of International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers, D.C., 135 F.Supp. 337.
Furthermore, the acts complained of in the instant case and which the Bank sought to enjoin were not peaceful picketing but rather physical intimidation, obstruction or interference with the business of the Bank and its customers which could result in far reaching and irreparable loss. See Potomac Electric Power Co. v. Washington Chap. of Congress of Racial Equality, D.C., 210 F. Supp. 418.
Even if the dispute were one within the definition of "labor dispute" *482 of the National Labor Relations Management Act it must constitute an unfair labor practice to be within the realm of the federal preemption under that Act. Petitioners allege no facts which bring the dispute within the proscribed practices of Section 158. A demand or refusal to arbitrarily hire four Negroes is not an unfair labor practice within the meaning of the Act. See National Labor Relations Board v. Jones and Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 983 Farmers Co-Operative Co. v. National Labor Relations Board, 8 Cir., 208 F.2d 296.
In any event, the National Labor Relations Act has not pre-empted all state jurisdiction. In Garner v. Teamsters, Chauffeurs & Helpers Local Union 776, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228, the Supreme Court said:
"The National Labor Management Relations Act, as we have before pointed out, leaves much to the states, though Congress has refrained from telling us how much. We must spell out from conflicting indications of congressional will the area in which state action is still permissible.
"This is not an instance of injurious conduct which the National Labor Relations Board is without express power to prevent and which therefore either is `governable by the state or it is entirely ungoverned.' In such cases we have declined to find an implied exclusion of state powers. International Union, [U. A. W., A. F. of L., Local 232] v. Wisconsin [Employment Relations] Board, 336 U.S. 245, 254, [69 S.Ct. 516, 521, 93 L.Ed. 651]. Nor is this a case of mass picketing, threatening of employees, obstructing streets and highways, or picketing homes. We have held that the state still may exercise `its historic powers over such traditionally local matters as public safety and order and the use of streets and highways.' Allen-Bradley Local [No. 1111, United Electrical Radio and Machine Workers of America] v. Wisconsin [Employment Relations] Board, 315 U.S. 740, 749 [62 S.Ct. 820, 825, 86 L.Ed. 1154.] * * *"
We agree with the conclusion of the state courts that the restraining order here does not conflict with the pre-empted field of the National Labor Relations Management Act.
It should also be pointed out, as was done by the St. Louis Court of Appeals and the Court in case number 64 C 53, Louis Ford, et al., that the facts in these cases are closely allied with those in Hughes v. Superior Court of State of California in and for Contra Costa, 339 U.S. 460, 70 S.Ct. 718, 94 L.Ed. 985. In that case the court enjoined picketing which was directed to support a demand that a grocery store fill all positions becoming open with non-whites until the racial balance of the stores employees was in the same proportion as that of its customers. The Supreme Court upheld the injunction. The case was decided on the ground that the injunction did not violate the protection of the Fourteenth Amendment. No recognition of the possibility of a "labor dispute" and "unfair labor practice" was given.
The petitioners hint in this contention, without clearly defining the issue, that the injunction is invalid because it is state action used to enforce a private policy of discrimination. The claim is made without supporting allegations of fact or citation of law. It appears incongruous that petitioners should make this claim when the whole tenor of their demand was one of discrimination. The Hughes case, supra, is ample authority for the Circuit Court's action. Additionally, it might be pointed out, that here the restraining order was issued, not to prohibit picketing designed to inform the public, but only physical interference with the operation of the Bank, and the freedom of their customers and the public to use the facilities until hearing to determine whether an injunction should issue. The Court had jurisdiction over the subject matter and the parties and until reversal *483 by orderly and proper proceedings, disobedience to the restraining order was subject to punishment for contempt. United States v. United Mine Workers, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884.
Issue (4) The Court ignored jurisdictional requirements throughout these proceedings.
What exactly petitioners have in mind by virtue of this claim is not clear. The brief filed in their behalf suggests that it is merely a repetition of the various other issues under a separate jurisdictional heading.
Issue (5) Petitioners in Grand, et al., separate from their contention numbered (4) herein, assert that the court ignored jurisdictional requirements in that they were given no opportunity to purge themselves and no time to adequately prepare their defense.
The contention would have merit only if the contempt involved were civil, and the citation issued to enforce obedience to a court order. The contempt citation in this case is criminal, (see infra), one directed to acts done and completed, a disobedience accomplished. The aim of the imprisonment is to vindicate the authority of the law. The contempt was complete and could not be purged. See Carder v. Carder, Mo.App., 61 S.W. 2d 388; Gompers v. Buck's Stove and Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797; United States v. United Mine Workers of America, 330 U.S. 258, 259, 67 S.Ct. 677, 91 L.Ed. 884.
Petitioners in case Grand et al. also assert that the Court ignored jurisdictional requirements they had no time to adequately prepare their defense, take depositions or make a pre-trial examination of material used as evidence in the contempt proceeding. The contention appears misnomered as a jurisdictional question. It is more appropriately an attack on the fairness of the hearing.
The allegations regarding this issue suggest no facts not already contained in the record. The demonstration upon which the attachment for contempt was based occurred October 7, 1963. Petitioners were arrested on that date and brought before the Court to plead to the charges. Upon entering their pleas of not guilty, the trial was set for October 10, 1963. On October 10th it was continued to October 14, 1963. On October 14th, petitioners attorneys asked for a continuance. The request was denied; whereupon petitioners announced ready and the case proceeding to trial which was concluded October 16th.
The attorneys for petitioners in Grand et al. were the same as in Curtis, et al., and as in another related contempt case, Ford, et al. (for which the application for habeas relief was considered by Judge James H. Meredith, 236 F.Supp. 831), the trials of which had just preceded Grand et al. The record clearly shows that the procedures, the charges and the evidence was substantially of the same nature in each case. It is unfathomable that the parties were surprised by the evidence, unfamiliar with the law or the facts, and no such claim is made. The general allegation before this Court of inadequacy of seven days for preparation to disprove contempt in view of the record neither calls for an evidentiary hearing or further consideration as a question of law.
Issue (6) Petitioners in case Grand, et al., claim to have been specifically excluded from the restraining order.
Petitioners claim that the contempt citation is void as to them for the reason that they were neither named defendants or members of the class represented.
The enjoining court and the St. Louis Court of Appeals found as a fact that each of the petitioners had actual notice of the restraining order. The record abundantly supports that finding. Persons having actual notice of an injunction, although not parties to the original suit are amenable to it. In re Coggshall, 100 Mo.App. 585, 75 S.W. 183; Union Tool Co. v. Wilson, 259 U.S. 107, 42 S.Ct. 427, 66 L.Ed. 848.
The remaining issues attack the fairness of the hearing or post-trial matters. In preface to all of these issues, the *484 Court would point out that the St. Louis Circuit Court held an extensive hearing on the contempt charges with full opportunity for the parties to develop the facts, and made specific findings as to each of the defendants. Furthermore, the Court of Appeals went behind the judgment upon the applications to that court for habeas relief. Again the merits of the contempt citation were decided, the trial record examined for support of the facts found; particularly the finding beyond a reasonable doubt of the guilt of the petitioners. It cannot be said that the facts regarding the contempt were not fully developed, nor do petitioners in this action state any additional facts or bring to the Court's attention any areas of fact relevant to the conduct found to constitute contempt which were not developed in the state hearing. The contentions of petitioners regarding the hearing are primarily directed to the procedure.
Issue (7) Sections 476.110 to 476.140 V.A.M.S.[4] and Supreme Court Rules 35.01, V.A.M.R.[5] and 92.15, V.A.M.R.[6] were construed in such a way that petitioners were tried for civil contempt and found guilty of criminal contempt.
The contempt proceedings in Curtis et al. was begun by application for a contempt citation. It charged the defendants named therein with "willful and deliberate violation" of the restraining order and prayed that defendants be required to show cause why they should not be "punished" for contempt. On September 11, separate notices of contempt, meeting the requirements of Rule 35.01, were filed and served on the defendants but said notices did not state a definite time or place for defendants to appear nor were they signed by the Court. Further notices were filed September 18th and served requiring the petitioners to appear at 10:00 A.M. on September 23 "and show cause why you should not be punished for contempt." Both the notices of the 11th and 18th charged the petitioners with "wilful disobedience" of the restraining order.
The contempt proceeding in Grand, et al. began by motion in the original injunction action. It sought attachment of the alleged contemnors and commitment unless the contempt was disproved. The petitioners were brought before the court and the court read the notice charging the violation of the restraining order and declaring that the violation constituted an offense against the majesty of the law and the authority of the Court for which petitioners were "punishable for contempt."
The nature of the contempt charged in these cases consisted of both civil and criminal elements. It is clear from the pleadings that the criminal charge was included. The pleadings and notice operated clearly to advise the petitioners of the nature of the charge. Here where the restraining order forbid certain conduct, performance of that conduct would be an offense against the dignity and authority of the Court and, thus, constitute a criminal contempt. Carder v. Carder, Mo.App., 61 S.W.2d 389; Gompers v. Buck's Stove and Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797.
Technical accuracy in the procedure for contempt is not required. Osborne v. Purdome, Mo., 244 S.W.2d 1005, 29 A.L.R.2d 1141; United States v. United Mine Workers of America, supra; Bullock v. United States, 6 Cir., 265 F.2d 683. Due process requires not technical accuracy, but that the person charged:
"be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses *485 in his behalf, either by way of defense or explanation." In re Oliver, 333 U.S. 257, 275, 68 S.Ct. 499, 92 L.Ed. 682 (1948).
The procedure in these cases conformed to these requirements.
Issue (8) The Court applied Section 56.110[7] RSMo (1959) V.A.M.S., and the public policy of Missouri so as to permit conviction and punishment as for criminal contempt when prosecuted by an interested person and a private party litigant.
Petitioners complain of the appointment of Wayne L. Millsap and John Montrey, attorneys for the Bank, as special prosecutors in the contempt proceedings. They complain that the special interest of the attorneys because of their dual role, and that of Mr. Millsap as the son-in-law of the president of the Bank, deprive them of due process  i. e., a fair and impartial trial.
The court has inherent power to punish for contempt and to appoint attorneys to represent it or the state in the prosecution of the proceeding. Osborne v. Purdome, Mo., 244 S.W.2d 1005, 29 A.L.R.2d 1141; Ex parte Howell, 273 Mo. 96, 200 S.W. 65. The fact of special interest of the prosecutor does not of itself deprive petitioners of their right to an impartial trial. Allegations of actual prejudice resulting from this interest must be made to raise a constitutional issue. This Court cannot assume abuse or prejudice in the exercise of another court's inherent power.
Issue (9) The Court failed to remove the "special prosecutor" after evidence of misconduct.
This claim is made only as to Curtis, et al. and is based upon the pretrial questioning and the calling to testify of a sixteen year old girl who took part in the August 30th demonstration. Petitioners objected to the testimony at the hearing, claiming that the witnesses had been intimidated, coerced and promised immunity. The court allowed examination of the witness by petitioners. The examination appearing in the record reveals no misconduct.
Issue (10) Petitioners have been effectively denied a review by appeal because an action which was originally a civil action was converted to a criminal contempt action.[8]
Petitioners cited no authority that a state procedure for criminal contempt which does not provide for review by appeal violates a fundamental constitutional right. Due process does not comprehend the right to appeal. National Union of Marine Cooks and Stewards v. Arnold, 348 U.S. 37, 75 S.Ct. 92, 99 L.Ed. 46 (1934). McKane v. Durston, 153 U.S. 684, 687, 14 S.Ct. 913, 38 L.Ed. 867 (1894).
It might be added, in this case the petitioners were granted the benefits of an appeal through the broad scope of the habeas corpus action in the State Court of Appeals.
Issue (11) The sentencing court imposed excessive fines and sentences.
The sentences in the state court are not properly subject to attack in the federal court by a writ of habeas corpus. United States ex rel. Marcial v. Fay, 2 Cir., 267 F.2d 507; Terrell v. Biddle, 8 Cir., 139 F.2d 32, denied cert. Terrel v. *486 Pescor, 321 U.S. 794, 64 S.Ct. 785, 88 L.Ed. 1083, rehearing denied 322 U.S. 767, 64 S.Ct. 941, 88 L.Ed. 1593; Conley v. Cox, 8 Cir., 138 F.2d 786.
Since the remand of this action Congress has passed the Civil Rights Act of 1964 and the United States Supreme Court has held in Hamm v. City of Rock Hill, 379 U.S. 306, 85 S.Ct. 384, 13 L.Ed. 2d 300, that the Act applies retroactively to require the dismissal of pending actions and appeals involving violation of state trespass laws. We do not feel that the decision has any bearing on these cases for the reason that the convictions in these cases were for criminal contempt brought to uphold the dignity and majesty of a court having jurisdiction over the subject matter and the parties and for the further reason that the Civil Rights Act specifically excludes the type of dispute here involved. Section 703(j)[9] (Title 42 U.S.C.A. § 2000e-2(j).

CONCLUSION
In conclusion, it appears from the pleadings and exhibits in this case and the record in the state proceedings that no evidentiary hearing is required under Townsend v. Sain, supra, and that the Circuit Court for the City of St. Louis had jurisdiction of the subject matter to issue a temporary restraining order and jurisdiction over the persons; and that petitioners had a full and fair hearing. It further appears that the procedure defects, if any, did not constitute deprivations of fundamental liberties so as to entitle petitioners to habeas relief and that the applications should be denied. No further order will be made concerning bail pending further order of this Court or the Court of Appeals for the Eighth Circuit.
NOTES
[1] Rule 92 governs the issuance of restraining orders and injunctions. Sec. 92.09 provides:

"No injunction or restraining order, unless on final hearing or judgment, shall issue in any case, except in suits instituted by the state in its own behalf, until the plaintiff, or some responsible person for him, shall have executed a bond with sufficient surety or sureties to the other party, in such sum as the court or judge shall deem sufficient to secure the amount or other matter to be enjoined, and all damages that may be occasioned by such injunction or restraining order to the parties enjoined, or to any party interested in the subject matter of the controversy, conditioned that the plaintiff will abide by the decision which shall be made thereon, and pay all sums of money, damages and costs that shall be adjudged against him if the injunction or restraining order shall be dissolved."
[2] Section 526.070 V.A.M.S. is the same as the rule (92.09) except that it does not specify "restraining orders" within its terms.
[3] 29 U.S.C.A. § 152(9) provides:

"The term `labor dispute' includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee."
[4] 476.110 to 476.140 V.A.M.S. defines contempt of court and provides for punishment and commitment.
[5] Supreme Court Rule 35.01, V.A.M.R. outlines procedure for criminal contempt.
[6] 92.15, V.A.M.R. outlines procedure for punishment for violation of injunctions.
[7] 56.110 V.A.M.S. provides:

"If the prosecuting attorney and assistant prosecuting attorney be interested or shall have been employed as counsel in any case where such employment is inconsistent with the duties of his office, or shall be related to the defendant in any criminal prosecution, either by blood or by marriage, the court having criminal jurisdiction may appoint some other attorney to prosecute or defend the cause. (R.S.1939 § 12948)."
[8] Petitioners also claimed that having to remain in jail while seeking review by habeas corpus violated fundamental rights. This segment of their application became moot upon their release on bail pending further order by the Court of Appeals for the Eighth Circuit.
[9] Section 703(j) Civil Rights Act 1964 provides:

"Nothing contained in this title shall be interpreted to require any employer, employment agency, labor organization, or joint labor-management committee subject to this title to grant preferential treatment to any individual or to any group because of the race, color, religion, sex, or national origin of such individual or group on account of an imbalance which may exist with respect to the total number or percentage of persons of any race, color, religion, sex, or national origin employed by any employer, referred or classified for employment by any employment agency or labor organization, admitted to membership or classified by any labor organization, or admitted to, or employed in, any apprenticeship or other training program, in comparison with the total number or percentage of persons of such race, color, religion, sex, or national origin in any community, State, section, or other area, or in the available work force in any community, State, section, or other area."