362 F.2d 999
 Louis FORD et al., Appellants,
v.
William BOEGER, Warden St. Louis City Jail, Appellee.
Robert B. CURTIS et al., Appellants,
v.
William BOEGER, Warden St. Louis City Jail, Appellee.
Michela GRAND et al., Appellants,
v.
William BOEGER, Warden St. Louis City Jail, Appellee.
 No. 18011.
 No. 18032.
 No. 18033.
 United States Court of Appeals Eighth Circuit.
 July 6, 1966.
 Rehearing Denied August 16, 1966.
 
 COPYRIGHT MATERIAL OMITTED Robert B. Curtis, pro se, and Charles R. Oldham, St. Louis, Mo., for appellants. Joseph S. McDuffie, Robert L. Witherspoon, St. Louis, Mo., of counsel; Margaret B. Wilson, Billie Jones, Wyvetter Hoover Young, Clyde S. Cahill and Emanuel Williams, St. Louis, Mo., were with them on the brief.
 Eugene P. Freeman, Associate City Counselor, City of St. Louis, St. Louis, Mo., for appellee. Thomas F. McGuire, City Counselor, City of St. Louis, was with him on the brief.
 Before VAN OOSTERHOUT and MEHAFFY, Circuit Judges, and VAN PELT, District Judge.
 VAN OOSTERHOUT, Circuit Judge.
 
 
 1
 Before us are three consolidated appeals from denial by the United States District Court of petitions for writs of habeas corpus. The petitioners challenge the validity of state convictions for criminal contempt and the resulting sentences imposed for violation of restraining order entered on August 30, 1963, requiring petitioners to desist and refrain from unlawfully interfering with the business of the Jefferson Bank and Trust Company by physically obstructing entrance and exit of customers or by preventing patrons usual access to tellers' windows and other departments of the bank. Peaceful picketing was not proscribed.[1]
 
 
 2
 Petitioners' convictions all arose out of asserted willful violations of such order. Each of the three cases before us involves separate and distinct violations of the restraining order occurring on different dates. Separate hearings were had with respect to each demonstration. Case No. 18,032 arose out of a demonstration at the bank on August 30, 1963. Petitioners found guilty in this respect, together with the sentences imposed, are:
 
 
 3
 City
 Name Jail Fine

 Robert B. Curtis 270 days $1,000.00
 William L. Clay 270 days 1,000.00
 Rev. Charles
 Perkins 180 days 500.00
 Lucien Richards 90 days 500.00
 Norman Seay 90 days 500.00
 
 
 4
 Case No. 18,011 arose out of the October 4, 1963, demonstration. The petitioners found guilty, and the sentences imposed, are:
 
 
 5
 City
 Name Jail Fine

 Louis Ford One Year $500.00
 Taylor Jones One Year 500.00
 Benjamin Goins 180 days 500.00
 Ian Grand 180 days 500.00
 Mrs. Roberta
 Tournour 120 days 500.00
 Kenneth Lee 60 days 500.00
 Ronald Glenn 60 days 500.00
 
 
 6
 Case No. 18,033 arose out of the October 7, 1963, demonstration. The petitioners convicted, with the sentences imposed, are:
 
 
 7
 City
 Name Jail Fine

 James Peake One Year $500.00
 Michela Grand 120 days 500.00
 Danny Pollock 60 days 500.00
 
 
 8
 Petitioners in all of these cases filed petitions for writ of habeas corpus with the St. Louis Court of Appeals. They were given a full evidentiary hearing. Relief was denied all petitioners now before us.[2] The St. Louis Court of Appeals in a fifty-page opinion, Curtis v. Tozer, 374 S.W.2d 557, fully and fairly sets out the facts, the issues raised and the basis of disposition of such issues.
 
 
 9
 Petitioners next applied to the Supreme Court of Missouri for habeas corpus relief. Said Court on January 31, 1964, in an unreported opinion, denied relief, stating:
 
 
 10
 "Application for writ of habeas corpus denied because petition and exhibits filed, including transcript of evidence submitted by petitioners to this Court, fail to show a claim on which relief can be granted for the reasons stated in the opinion of the St. Louis Court of Appeals in the consolidated cases of: In the Matter of Robert B. Curtis et al. v. Martin L. Tozer, Sheriff, et al., No. 31,777, In the Matter of Louis Ford et al. v. Martin L. Tozer, Sheriff, et al., No. 31,778, and In the Matter of Michela Grand et al. v. Martin L. Tozer, Sheriff, No. 31,779 certified copy of which opinion this Court has procured on its own motion."
 
 
 11
 Petitioners next sought habeas corpus relief from the United States District Court. Such relief was first denied upon the ground that the petitioners had not exhausted their state remedies by reason of their failure to apply to the United States Supreme Court for certiorari. Upon appeal, we reversed and remanded. Curtis v. Boeger, 8 Cir., 331 F.2d 675, stating:
 
 
 12
 "[T]he Court determines that appellants were not, as a prerequisite to a hearing upon the merits of their application, required to petition the Supreme Court of the United States for writ of certiorari and further determines that they have exhausted their state remedies within the teachings of Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837.
 
 
 13
 "Accordingly, the orders appealed from should be and hereby are vacated and the causes are remanded to enable the District Court to consider the question on the basis of Fay v. Noia, supra, and to consider whether the issues sought to be raised are such as call for a hearing under Townsend v. Sain, supra." [372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770.]
 
 
 14
 Upon remand, the District Court determined that the petitions presented only legal issues, that all fact issues had been fully tried and fairly determined by the state courts, and that no asserted federal constitutional rights of petitioners had been violated. The petitions were dismissed. Ford v. Boeger, 236 F. Supp. 831; In Re Curtis' Petition, 240 F.Supp. 475. These appeals are from such dismissals.
 
 
 15
 The legal issues presented by all petitioners are in substance the same. The errors relied upon as a basis for reversal may be summarized as follows:
 
 
 16
 I. Improper denial of an evidentiary hearing.
 
 
 17
 II. Lack of jurisdiction in the state court to issue the restraining order upon which the contempt convictions were based.
 
 
 18
 III. Procedures followed deprived plaintiffs of rights guaranteed by the Fifth, Sixth, and Fourteenth Amendments.
 
 
 19
 IV. Conviction of contempt without benefit of jury trial constituted denial of due process.
 
 
 20
 V. The restraining order violates petitioners' right of free speech guaranteed by the First and Fourteenth Amendments.
 
 
 21
 VI. James Peake's punishment constituted cruel and inhuman punishment in violation of the Eighth Amendment.
 
 
 22
 VII. Other errors.
 
 
 23
 The facts bearing upon the issues before us are fully and fairly set out in the opinions of the St. Louis Court of Appeals and the District Court, heretofore cited. The demonstrations upon which the contempt convictions were based arose out of efforts of CORE to have the Jefferson Bank and Trust Company employ four negroes in clerical positions. The bank was advised that direct action would be taken against it if the requested positions were not made available. The bank replied it had no openings. The bank, acting upon information which it had obtained that CORE planned sit-ins, stand-ins and lie-ins at the bank on August 30, instituted an action in the state court for an injunction and restraining order. The order was served on most of the defendants before the August 30 demonstration and upon substantial evidence, the state court found that all participating petitioners had notice of the restraining order before the demonstration in which they participated. In the demonstrations, the petitioners blocked the entrance to the bank by standing in front of the entrance locking arms and blocked entrance to the tellers' windows by sitting and lying in front of such windows. While the demonstrations were in progress, the restraining order was read by a bank official, the demonstrators were requested to leave and refused to do so.
 
 
 24
 We now proceed to the consideration of the errors raised.
 
 I.
 
 25
 No error was committed in denying an evidentiary hearing. At a pretrial conference called to consider the necessity of an evidentiary hearing, petitioners limited their request to produce additional evidence to the following items: (1) The nature and extent of the alleged labor dispute between CORE and the bank. (2) Bias and prejudice on the part of special prosecutor Millsap. (3) Discriminatory hiring practices of the bank.
 
 
 26
 It appears that full opportunity was afforded in the state court to present evidence upon each of said points and no showing has been made that the proposed additional evidence would be material upon any controlling issue before us.
 
 
 27
 The trial court recognized that Townsend v. Sain, requires an evidentiary hearing when material facts are in dispute. Judge Meredith, at p. 834 of 236 F.Supp., states that after reading petitioners' application and brief, it is his view that no facts are in dispute and that the dispute relates only to conclusions of law. We agree.
 
 
 28
 Even when facts are disputed, an evidentiary hearing is unnecessary where the state court after a full hearing reliably found the relevant facts. Townsend v. Sain, 372 U.S. 293, 312-313, 83 S.Ct. 745. See Case v. Nebraska, 381 U.S. 336, 345, 85 S.Ct. 1486, 14 L.Ed.2d 422, Justice Brennan concurring.
 
 II.
 
 29
 Petitioners in support of their contention that the state court lacked jurisdiction to issue the restraining order urge that CORE is a labor organization and that the dispute between CORE and the bank is a labor dispute of a type with respect to which the federal government by means of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., has preempted the field. Inasmuch as we are of the view, as hereinafter set forth, that no preemption exists under the facts of this case, we shall in the interest of not unduly prolonging this opinion assume without so deciding that CORE is a labor organization and that the dispute is a labor dispute covered by the Act.
 
 
 30
 In Weber v. Anheuser-Busch, Inc., 348 U.S. 468, 480-481, 75 S.Ct. 480, 488, 99 L.Ed. 546, the Court states:
 
 
 31
 "By the Taft-Hartley Act, Congress did not exhaust the full sweep of legislative power over industrial relations given by the Commerce Clause. Congress formulated a code whereby it outlawed some aspects of labor activities and left others free for the operation of economic forces. As to both categories, the areas that have been pre-empted by federal authority and thereby withdrawn from state power are not susceptible of delimitation by fixed metes and bounds. Obvious conflict, actual or potential, leads to easy judicial exclusion of state action. Such was the situation in Garner v. Teamsters Union [346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228], supra. But as the opinion in that case recalled, the Labor Management Relations Act `leaves much to the states, though Congress has refrained from telling us how much.' 346 U.S., at page 488, 74 S.Ct., at page 164. This penumbral area can be rendered progressively clear only by the course of litigation. * *"
 
 
 32
 To like effect, see San Diego Bldg. Trades Council, Millmen's Union v. Garmon, 359 U.S. 236, 240-241, 79 S.Ct. 773, 3 L.Ed. 2d 775; International Association of Machinists v. Gonzales, 356 U.S. 617, 619, 78 S.Ct. 923, 2 L.Ed.2d 1018; Garner v. Teamsters Union, 346 U.S. 485, 488, 74 S.Ct. 161.
 
 
 33
 In Allen-Bradley Local No. 1111, etc. v. Wisconsin Employment Relations Board, 315 U.S. 740, 62 S.Ct. 820, 86 L.Ed. 1154, the Court held that the National Labor Relations Act did not preclude state action restraining mass picketing, obstructing entrance and egress from the employer's factory and obstructing public roads and threatening injury to employees desiring to work. The Court states:
 
 
 34
 "We agree with the statement of the United States as amicus curiae that the federal Act was not designed to preclude a State from enacting legislation limited to the prohibition or regulation of this type of employee or union activity. The Committee Reports on the federal Act plainly indicate that it is not `a mere police court measure' and that authority of the several States may be exerted to control such conduct. Furthermore, this Court has long insisted that an `intention of Congress to exclude States from exerting their police power must be clearly manifested'. * * *" 315 U.S. 740, 748-749, 62 S.Ct. 820, 825.
 
 
 35
 In United Auto etc. Workers v. Wisconsin Employment Relations Board, 351 U.S. 266, 76 S.Ct. 794, 100 L.Ed. 1162, the Court holds that subsequent amendments to the National Labor Relations Act have not impaired Allen-Bradley holdings. The general rule that state courts may not enjoin conduct which has been made an unfair labor practice is recognized. The Court goes on to say:
 
 
 36
 "But our post-Taft-Hartley opinions have made it clear that this general rule does not take from the States power to prevent mass picketing, violence, and overt threats of violence. The dominant interest of the State in preventing violence and property damage cannot be questioned. It is a matter of genuine local concern. Nor should the fact that a union commits a federal unfair labor practice while engaging in violent conduct prevent States from taking steps to stop the violence. This conclusion has been explicit in the opinions cited in note 12.
 
 
 37
 "The States are the natural guardians of the public against violence. It is the local communities that suffer most from the fear and loss occasioned by coercion and destruction. We would not interpret an act of Congress to leave them powerless to avert such emergencies without compelling directions to that effect.
 
 
 38
 "We hold that Wisconsin may enjoin the violent union conduct here involved. * * *" 351 U.S. 266, 274-275, 76 S.Ct. 794, 799-800.
 
 
 39
 Additional recognition of the right of a state to afford protection against union violence is found in Local 20, Teamsters, etc., Union v. Morton, 377 U.S. 252, 257, 84 S.Ct. 1253, 12 L.Ed.2d 280; San Diego Bldg. Trades Council, Millmen's Union v. Garmon, 359 U.S. 236, 247, 79 S.Ct. 773; Youngdahl v. Rainfair, Inc., 355 U.S. 131, 138-139, 78 S.Ct. 206, 2 L.Ed.2d 151; Garner v. Teamsters Union, 346 U.S. 485, 488, 74 S.Ct. 161.
 
 
 40
 Examination of the record before us shows that only violent conduct within the scope of matters left to state jurisdiction is here enjoined. Peaceful picketing is not proscribed. We agree with the conclusion of the St. Louis Court of Appeals upon this issue, thus stated: "As already indicated, violence, intimidation and similar acts may be restrained and enjoined even though they are threatened or committed in connection with a labor dispute." 374 S.W.2d 557, 595.
 
 
 41
 Petitioners' reliance upon the Norris-LaGuardia anti-injunction Act, 29 U.S.C.A. § 101 et seq., is misplaced. The Norris-LaGuardia injunction limitations are imposed only upon courts of the United States. The Court of Appeals for the Third Circuit in American Dredging Co. v. Local 25, etc., 3 Cir., 338 F.2d 837, 850-856, clearly and convincingly demonstrates why the prohibition applies only to federal courts — not to state courts.
 
 
 42
 An additional separate and independent basis exists for upholding the criminal contempt convictions. United States v. United Mine Workers, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884, and cases cited therein, clearly hold that where a bona fide doubtful question of jurisdiction is presented, the trial court has a right to issue a restraining order to maintain the status quo while it is determining its own authority to grant injunctive relief. As a necessary consequence, the court has the power to punish the violation of a restraining order so made by contempt proceedings. The Court states:
 
 
 43
 "Proceeding further, we find impressive authority for the proposition that an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings. This is true without regard even for the constitutionality of the Act under which the order is issued. In Howat v. Kansas, 258 U.S. 181, 189-190 [42 S.Ct. 277, 280, 281, 66 L.Ed. 550], 1922, this Court said:
 
 
 44
 `An injunction duly issuing out of a court of general jurisdiction with equity powers, upon pleadings properly invoking its action, and served upon persons made parties therein and within the jurisdiction, must be obeyed by them, however erroneous the action of the court may be, even if the error be in the assumption of the validity of a seeming, but void law going to the merits of the case. It is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority, to be punished.'
 
 
 45
 Violations of an order are punishable as criminal contempt even though the order is set aside on appeal, Worden v. Searls, 121 U.S. 14 [7 S.Ct. 814, 30 L.Ed. 853], 1887, or through the basic action has become moot, Gompers v. Buck's Stove & Range Co., 221 U.S. 418 [31 S.Ct. 492, 55 L.Ed. 797] 1911." 330 U.S. 258, 293-294, 67 S.Ct. 677, 696.
 
 
 46
 See United States v. Shipp, 203 U.S. 563, 27 S.Ct. 165, 51 L.Ed. 319; Carter v. United States, 5 Cir., 135 F.2d 858.
 
 
 47
 Similarly, in our present case the court issuing the restraining order had jurisdiction and at least a bona fide question exists on the court's right to issue the injunction sought. The court has power to preserve existing conditions while it is determining its own authority to grant injunctive relief.
 
 
 48
 In our present case, the record before us shows that the Circuit Court of St. Louis, after due notice to all parties and full hearing, granted a permanent injunction on December 6, 1963, enjoining substantially the same conduct proscribed by the restraining order. So far as we can ascertain, no appeal was taken from such order. The district court in the present case in its opinion correctly held, "The Court had jurisdiction over the subject matter and the parties and until reversal by orderly and proper proceedings, disobedience to the restraining order was subject to punishment for contempt." 240 F.Supp. 475, 482-483.
 
 III.
 
 49
 Petitioners next urged that the proceedings followed in the state court deprived them of rights guaranteed by the Fifth, Sixth and Fourteenth Amendments. Under this heading, they urge that they were deprived of a fair trial by reason of the following: (1) Petitioners in Ford, No. 18,011, were not allowed a reasonable time to prepare for trial. (2) Appointment of attorney Millsap as special prosecutor, and the prejudicial manner in which he conducted the proceedings. (3) Insufficient notice of nature of charges made. (4) Extensive adverse newspaper and radio publicity.
 
 
 50
 All of such contentions were fully heard and fairly considered by the St. Louis Court of Appeals as reflected by its opinion. Upon the basis of the record, such court was justified in determining that petitioners' constitutional rights were not violated in the respects claimed. The United States District Court hearing these cases was warranted in determining as it did that the petitioners had a fair trial and that their constitutional rights were not violated in the respects claimed.
 
 
 51
 The prejudicial publicity issue was not fairly raised either in the state court or in the federal district court. The contempt proceedings were tried to Judge Scott without a jury. It is not likely that an experienced judge will be influenced in his decisions by such publicity. The conclusions reached by the state trial court were supported by substantial evidence and it is difficult to see how the court could have fairly arrived at any other conclusions with respect to the guilt of contempt.
 
 IV.
 
 52
 Petitioners urge that the substantial sentences imposed without benefit of a jury trial constitute a denial of due process under the Sixth, Eighth and Fourteenth Amendments. This contention was never raised in the state courts. 28 U.S.C.A. § 2254 specifically requires a state prisoner to exhaust all available state remedies before he can resort to federal habeas corpus relief. The Supreme Court in Case v. Nebraska, 381 U.S. 336, 85 S.Ct. 1486, 14 L.Ed.2d 422, particularly in the concurring opinions, points out the desirability of minimizing the necessity for state prisoners to resort to federal habeas corpus and urges the prior utilization of available state procedure for testing claims of violation of federal constitutional rights.
 
 
 53
 In instances where adequate state procedures are available, this court has repeatedly held that the exhaustion of such state remedies is required before federal habeas corpus may be entertained. Ellenson v. Fugate, 8 Cir., 346 F.2d 151; Dabney v. Sigler, 8 Cir., 345 F.2d 710; Witt v. Nash, 8 Cir., 342 F.2d 791; Cyronne-DeVirgin v. State of Missouri, 8 Cir., 341 F.2d 568.
 
 
 54
 The Witt case, supra, arose out of a Missouri conviction. We there re-expressed our view that the Missouri Supreme Court Rule 27.26, V.A.M.R., is the substantial equivalent of 28 U.S.C.A. § 2255 and that it provides for a fair post-conviction review of federal constitutional violations charged in state trials resulting in conviction. We remanded with direction to the district court to dismiss the proceeding without prejudice to appellant's right to seek relief in the state court.
 
 
 55
 It is also a well-established principle of appellate review that generally issues not fairly raised in the trial court cannot be considered upon appeal. Vincent v. United States, 8 Cir., 361 F. 2d 474 (June 7, 1966); Masters v. Eide, 8 Cir., 353 F.2d 517, 518; Haynes v. Harris, 8 Cir., 344 F.2d 463, 466; Sutton v. Settle, 8 Cir., 302 F.2d 286, 288; see Yakus v. United States, 321 U.S. 414, 444, 64 S.Ct. 660, 88 L.Ed. 834; Whitney v. California, 274 U.S. 357, 362-363, 47 S.Ct. 641, 71 L.Ed. 1095; Page v. United States, 8 Cir., 282 F.2d 807, 810.
 
 
 56
 Petitioners at the state court trial were represented by numerous competent counsel. At the time of the trial in 1963, no right to a jury trial in criminal contempt cases had been established. See Green v. United States, 356 U.S. 165, 186-187, 78 S.Ct. 632, 2 L.Ed.2d 672. Doubtless because of this state of the law, no jury trial was demanded.
 
 
 57
 United States v. Barnett, 376 U.S. 681, 84 S.Ct. 984, 12 L.Ed.2d 23, decided after denial of habeas corpus by the St. Louis Court of Appeals, and Cheff v. Schnackenberg, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629, decided June 6, 1966, indicate that a view has developed in the Supreme Court to the effect that a jury trial should be granted in criminal contempt cases in instances where substantial penalties are imposed. Contempt convictions were affirmed in each of these cases. Each case arose out of a federal contempt conviction. In Cheff, the Court after deciding the case before it goes on to say:
 
 
 58
 "Therefore, in the exercise of the Court's supervisory power and under the peculiar power of the federal courts to revise sentences in contempt cases, we rule further that sentences exceeding six months for criminal contempt may not be imposed by federal courts absent a jury trial or waiver thereof. Nothing we have said, however, restricts the power of a reviewing court, in appropriate circumstances, to revise sentences in contempt cases tried with or without juries." 384 U.S. 373, 380, 86 S.Ct. 1523, 1526.
 
 
 59
 Since the Court states the foregoing position is taken on the basis of its supervisory power over federal courts, not on the basis of violation of a constitutional right to a jury trial, it would appear that the pronouncement does not apply directly to state criminal contempt convictions. The last sentence of the pronouncement may indicate that a federal conviction without a jury can be validated by reduction of the sentence to six months or less. We find nothing in the cases just discussed which indicates the new policy is to be retroactively applied. Here the state convictions became final at least in 1964.
 
 
 60
 Inasmuch as the jury issue was not fairly presented either to the state court or the federal district court, no error was committed in not deciding such issue.
 
 V.
 
 61
 Petitioners on brief here urge that the restraining order issued and the contempt convictions based thereon violate petitioners' right of free speech and assembly guaranteed under the First and Fourteenth Amendments. Defendant asserts that the issue of free speech and assembly was not raised in the state court or in the United States District Court. Petitioners have not answered this contention. Petitioners in the United States District Court did in very general and broad language assert violation of the First Amendment but the issue was not pressed in the district court nor was it passed upon. In our view, the issue was not fairly or adequately raised. Upon the basis of the authorities cited in the previous division, issues not raised in the state court cannot be pursued by a state prisoner in federal habeas corpus. In any event, we are satisfied for reasons hereinabove discussed, that petitioners' conduct goes well beyond protected free speech. See Pritchard v. Downie, 8 Cir., 326 F.2d 323.
 
 VI.
 
 62
 In the cases before us for review, petitioners raise the issue that the sentences imposed upon them were excessive and constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. The sentences imposed were within the limits provided by the applicable Missouri statute, V.A.M.S. § 476.120. As properly pointed out in the trial court's opinion, p. 485 of 240 F.Supp., p. 834 of 236 F. Supp., state sentences authorized by statute are not subject to attack by federal habeas corpus.[3]
 
 
 63
 On this appeal, the only sentence attacked on the cruel and unusual punishment grounds is that of James Peake. Peake was sentenced to one year's imprisonment of which he has served some fifty-five days. It is undisputed that Peake is a paraplegic and that he cannot move without the aid of a wheel chair. Such physical condition is a factor which is entitled to consideration by the sentencing court and by prison officials. There is no record before us with respect to any undue hardship suffered by Peake in serving his sentence. Statements in brief without record support cannot be considered.
 
 
 64
 Should Peake be required to serve the balance of his sentence, we cannot assume that the Missouri courts and prison officials will not give proper consideration to his physical handicaps. In any event, we are of the view that Peake should exhaust state remedies available before seeking federal habeas corpus relief.
 
 VII.
 
 65
 Other issues urged do not rise to the stature of federal constitutional rights. The issue of the validity of the bond filed presents only a question of contract interpretation and state law. The issue of whether some of the defendants were within the class of those restrained or whether they were guilty by reason of wrongfully and knowingly acting in collusion with those restrained was fairly tried and determined. The exhaustive opinion of the St. Louis Court of Appeals clearly reflects that full and fair consideration was given to all of petitioners' complaints and that no fundamental federally guaranteed constitutional rights were denied petitioners.
 
 
 66
 Petitioners have failed to establish that the United States District Court committed any error in denying their petitions for federal habeas corpus relief.
 
 
 67
 The judgments dismissing the petitions for writs of habeas corpus are affirmed.
 
 
 
 Notes:
 
 
 [1]
 The terms of the restraining order may be found in Curtis v. Tozer, Mo.App., 374 S.W.2d 557, 563
 
 
 [2]
 The St. Louis Court of Appeals discharged four petitioners not involved in these appeals upon the ground of insufficiency of the evidence to establish their guilt
 
 
 [3]
 At the time the sentences were imposed, the repetitive violent demonstrations created a situation which required effective state action to re-establish law and order. Looking at the situation in retrospect after a considerable lapse of time, some of the penalties may seem rather severe. Defendants, after serving part of their sentences, have been released upon bail. We have determined that the sentences were constitutionally imposed and valid. We have no clemency powers. The power to reduce or suspend the sentences imposed lies with the appropriate Missouri courts and officials