**HOLLAND FURNACE COMPANY,**
Petitioner,

v.

**FEDERAL TRADE COMMISSION,**
Respondent.

No. 12451.

United States Court of Appeals
Seventh Circuit.

Oct. 11, 1961.

Ohio, Sidley, Austin, Burgess & Smith, Chicago Ill., of counsel), for petitioner.

James E. Corkey, Asst. Gen. Counsel, E. K. Elkins, Atty., Federal Trade Commission, Pgad B. Morehouse, Acting Gen. Counsel, Alan B. Hobbes, Asst. Gen. Counsel, Miles J. Brown, Atty., Federal Trade Commission, Washington, D. C., for respondent.

Before DUFFY, CASTLE and KILEY, Circuit Judges.

DUFFY, Circuit Judge.

This is a petition by Holland Furnace Company for a review of an order of the Federal Trade Commission dated July 7, 1958, which directs Holland to cease and desist from certain practices in commerce found to be unfair and deceptive.

Holland's main office for manufacturing facilities is located in Holland, Michigan. It operates in forty-four states and has 475 branch and sub-branch offices. Holland has a field organization of approximately 5000 employees. Its business is the sale and installation of warm air furnaces. Holland claims a large part of its business is the replacement of warm air heating equipment which is no longer serviceable or which has become obsolete.

Salesmen or house-to-house canvassers sell Holland's products, the gross annual sales totaling at least $30 million. All sales are to the ultimate purchasers and the users of the equipment. Holland does not ship furnaces as units to its warehouses, but sends out quantities of essential parts.

After nearly two years of hearings, the hearing examiner rendered his initial decision. Petitioner appealed therefrom to the Commission, and on July 7, 1958, the Commission handed down its decision and opinion in which it denied the appeal and adopted the examiner's initial decision and proposed order.

The final order, in substance, directed that Holland and its agents, representatives and employees cease and desist from 1) representing that its employees are inspectors or employees of governmental

Stuart S. Ball, Chicago, Ill., Robert H. Trenkamp, Cleveland, Ohio, Edward A. McLeod, Malcolm C. Douglas, Cleveland, Ohio (Trenkamp & Bovington, Cleveland,

agencies or of gas or utility companies; 2) representing contrary to fact that its salesmen are heating engineers; 3) representing that furnaces manufactured by competitors are defective and not repairable and likely to result in fires or asphyxiation unless such are the facts; 4) tearing down or dismantling any furnace without the permission of the owner; 5) representing that a furnace which had been dismantled cannot be reassembled or used without danger of asphyxiation and fires etc., when such is not the fact; 6) requiring the owner of any furnace which has been dismantled by Holland's employees to sign a release absolving Holland of liability before reassembling such furnace; 7) refusing to immediately reassemble at the request of the owner any furnace which has been dismantled by Holland's employees; and 8) misrepresenting in any manner the condition of any furnace which has been dismantled by Holland's employees.

One aspect of this case was before us previously. After Holland had filed its petition for review by this Court on November 25, 1958, it filed a motion seeking determination of the jurisdictional issues raised in its petition for review in advance of a hearing on the merits. This Court granted that motion. Thereafter, briefs were filed and oral argument was held. On June 16, 1959, this Court denied petitioner's motion to vacate the order of the Commission on jurisdictional grounds. Holland Furnace Company v. Federal Trade Commission, 7 Cir., 269 F.2d 203. We held the Commission did have jurisdiction stating (269 F.2d 209), " * * * We hold as did the Commission that the acts, representations and conduct of Holland's employees in selling and distributing Holland's furnaces and parts, whether before or after such products had been warehoused in the state where sold and distributed, were in commerce within the meaning of the Federal Trade Commission Act [15 U.S.C.A. § 41 et seq.]. * * * " We also said, at page 210, " * * * Under such facts the temporary warehousing of the products in each

separate state in Holland's own warehouses is but an incident in its interstate business. The work of Holland's salesmen and servicemen create and are an essential part of Holland's vast interstate business and therefore is in commerce and subject to the regulative powers of the Commission."

Holland petitioned the Supreme Court of the United States for a writ of certiorari but this petition was denied (361 U.S. 932, 80 S.Ct. 369, 4 L.Ed.2d 353).

On this appeal, Holland is attempting to again litigate the question of jurisdiction. The excuse offered is that when the case was here previously, we did not have before us the entire record; that the hearing examiner had concluded that sales made from Holland branches in one state to customers located in an adjoining state were sufficient to bring the acts and practices complained of, in interstate commerce. Holland argues there is evidence of only a few sales across state lines, and that the acts and practices of Holland's employees claimed to be deceptive and unfair, were not connected with such interstate sales.

An examination of our previous opinion, and in particular the passages hereinbefore quoted, demonstrates our holding that the Commission did have jurisdiction was based upon broader grounds than the reasons attributed to the trial examiner. We see no need for a further discussion on this point. We adhere to and follow our previous determination. We again hold that the Federal Trade Commission had jurisdiction to enter the order of July 7, 1958.

Holland contends there was no substantial evidence of record to show that it had done any of the things proscribed in the Commission's order. To illustrate, Holland says that in only nine of the seventy-one transactions referred to, did a Holland salesman represent that he was a "heating engineer."

The hearing examiner referred to the testimony of an ex-public relations director of Holland who had investigated customer complaints and who testified sales-

men had represented themselves to be inspectors or representatives of governmental agencies, and represented themselves to be agents or inspectors of gas and other utility companies. We think the examiner was fully justified in stating "There are of record a number of additional witnesses who testified directly that there had been direct representations by Holland's agents that they were governmental and/or public utilities' representatives."

We have before us over 5200 pages of the printed record devoted largely to the testimony taken before the hearing examiner. It would unduly prolong this opinion to refer in any detail to the various witnesses whose testimony supports the findings of the Commission. However, one specific reference to such testimony will be made.

Former employee David testified about his instructions in the sales methods employed by Holland. He told about becoming a "heating engineer" shortly after he was employed. He worked with another employee, Francis, who explained and gave him instructions in the various procedures. After a furnace was torn down, another Holland employee would inspect it and say the parts were defective, and that blue spots or red spots in the castings would likely break through if there was a hot fire in the furnace. David told of one case were he was sent in to a home to condemn the furnace, and that he could not find any blue spots on the castings; in fact, it looked to be in perfect condition, and he told the lady in the house that there was nothing wrong. When he reported this to Mr. Francis, the latter "bawled the daylights out of me and said I never would make any money unless I condemned that pot. I told him—I said I couldn't find any blue spots. He said 'Well, —— —— ' — pardon the English —— —— 'condemn it because there weren't any blue spots. They don't know the difference.' "

■ We hold that the record before us, considered as a whole, contains substantial evidence to support the findings

that Holland, in carrying out a systematic sales program has:

1) Represented that its employees were employees or representatives of governmental agencies or of gas or utility companies;

2) Represented that its employees were heating engineers;

3) Misrepresented the condition of competitors' furnaces, or that the manufacturers of such furnaces were out of business or that parts therefor were unobtainable;

4) Dismantled furnaces without permission of the owners;

5) Misrepresented the condition of dismantled furnaces;

6) Required owners of furnaces dismantled by Holland to sign a release absolving Holland of liability as a condition precedent to reassembling the furnaces; and

7) Refused to reassemble, at the request of the owners, furnaces which it had dismantled.

■ Holland next contends the Commission has failed to accord it a fair hearing. It claims the hearing examiner's rulings and conduct were arbitrary, unreasonable, biased and prejudicial. One of its big complaints seems to be that the examiner interrupted Holland's attorneys and witnesses 573 times. There were eighty-eight days of hearings, so the charge is that the examiner interrupted slightly more than six times a day. From an examination of the record, we think the examiner was patient. It was the duty of the examiner to exercise control over the hearing. Holland's counsel tended to be prolix and long-winded. To illustrate, Rohrer's direct examination occupies twelve pages of the transcript, while the cross examination by Holland's counsel occupies seventy-two pages. After she had been on the stand two hours and fifteen minutes, the examiner did interrupt her testimony. It was for the purpose of a short recess. Another illustration is the witness Carothers whose direct examination occupies seventeen pages of the tran-

script while the cross examination by Holland's counsel occupies one hundred thirty-one pages. We think Holland had a fair hearing.

Holland's last contention is that the order of the Commission is invalid and unenforceable because it is vague, indefinite and uncertain, especially as to parts of the third, fifth, sixth and seventh numbered proscriptions of the order. We think there is no merit in this complaint. The order says no more than that future representations by Holland must have a basis in fact. Appropriate here is the statement of this Court in Zenith Radio Corporation v. Federal Trade Commission, 7 Cir., 143 F.2d 29, 31, "The order is not bound to chart a course for the petitioner. The petitioner can have no doubt of the evils complained of and sought to be corrected. * * *"

We conclude the Commission's order to cease and desist was properly issued. The prayer of the petitioner that said order be vacated and set aside is denied. The petitioner will be commanded to obey the order.

—Order affirmed.