CHEFF *v.* SCHNACKENBERG, U. S. CIRCUIT
JUDGE, ET AL.

No. 67.   Argued March 3, 1966.—Decided June 6, 1966.

374

*Joseph E. Casey* argued the cause for petitioner. With him on the brief was *Thomas B. Scott.*

*Nathan Lewin* argued the cause for respondents. With him on the brief were *Acting Solicitor General Spritzer, Assistant Attorney General Vinson, Beatrice Rosenberg, Sidney M. Glazer, E. K. Elkins* and *Miles J. Brown.*

MR. JUSTICE CLARK announced the judgment of the Court and delivered an opinion in which THE CHIEF JUSTICE, MR. JUSTICE BRENNAN and MR. JUSTICE FORTAS join.

This is a companion case to No. 412, *Shillitani* v. *United States,* and No. 442, *Pappadio* v. *United States, ante,* p. 364. Unlike those cases, this is a criminal contempt proceeding.

Upon petition of the Federal Trade Commission, Cheff was charged, along with Holland Furnace Company and 10 other of its officers, with criminal contempt of the Court of Appeals for the Seventh Circuit. The alleged contemnors were tried before a panel of three judges of the Court of Appeals without a jury. The corporation and three of its officers, including Cheff, were found guilty of violating a previous order of that court. Cheff, a former president and chairman of the board of Holland, was sentenced to six months' imprisonment; the other two officers were fined $500 each; and the corporation was fined $100,000. The remaining eight individuals were acquitted. 341 F. 2d 548. Cheff and Holland petitioned for certiorari. We denied Holland's petition, 381 U. S. 924, and granted Cheff's, limited to a review of the question whether, after a denial of a demand for a jury, a sentence of imprisonment of six months is constitutionally permissible under Article III and the Sixth Amendment. 382 U. S. 917. We hold that Cheff was not entitled to a jury trial and affirm the judgment.

## I.

The case had its inception in proceedings before the Federal Trade Commission where, in 1954, complaints were issued against Holland charging it with unfair methods of competition and deceptive trade practices in connection with the sale of its products. After extensive hearings, the Commission issued a cease-and-desist order against Holland "and its officers, agents, representatives and employees" prohibiting the continuance of practices the Commission found illegal. *In the Matter of Holland Furnace Co.*, 55 F. T. C. 55 (1958).

Holland petitioned the Court of Appeals to review and set aside the order of the Commission. Soon thereafter the Commission, claiming that Holland was continuing to violate its order, moved the Court of Appeals for a *pendente lite* order requiring compliance. On August 5, 1959, the court issued an order commanding Holland to "obey and comply with the order to cease and desist . . . unless and until said order shall be set aside upon review by this Court or by the Supreme Court of the United States . . . ." This order forms the basis of this criminal contempt proceeding. Meanwhile, Holland's petition for review was decided adversely to the corporation. In separate opinions, the Court of Appeals upheld the jurisdiction of the Commission to enter its cease-and-desist order, 269 F. 2d 203 (1959), and affirmed on the merits, 295 F. 2d 302 (1961).

In March 1962 the Commission petitioned the Court of Appeals to enter a show cause order against Holland for contempt of its *pendente lite* order. A rule was issued and attorneys appointed to prosecute on behalf of the court. Thereafter, in April 1963, rules were issued against Cheff and the other officers, as individuals, to show cause why they should not be held in criminal contempt "by reason of having knowingly, wilfully and

intentionally caused, and aided and abetted in causing, respondent Holland Furnace Company to violate and disobey, and fail and refuse to comply with" the order of August 5, 1959. Cheff demanded a jury trial, which was denied, and following a full hearing extending over a 10-day period the court found him guilty. As we have stated, a sentence of six months was imposed. In accordance with the limited grant of certiorari, there is no issue here as to the sufficiency of the hearing, excepting the absence of a jury.

## II.

Cheff first contends that contempt proceedings in the Court of Appeals which stem from administrative law enforcement proceedings are civil, rather than criminal, in nature. This may be true where the purpose of the proceeding is remedial. Cf. *Shillitani* v. *United States, ante,* p. 364. Within the context of the question before us, however, the contention is irrelevant, for a jury trial is not required in civil contempt proceedings, as we specifically reaffirm in *Shillitani, supra.* In any event, the contention is without merit. The purpose of the proceedings against Cheff could not have been remedial for he had severed all connections with Holland in 1962, long before the contempt proceedings were instituted against him. He had no control whatever over the corporation and could no longer require any compliance with the order of the Commission. Moreover, as Cheff himself points out, the corporation "had completely withdrawn from the business of replacement of furnaces, which is the area in which the violation is alleged." There was, therefore, an "absence of any necessity of assuring future compliance" which made the six-month sentence "entirely punitive." Brief for Petitioner, p. 16.

There can be no doubt that the courts of appeals have the power to punish for contempt. 18 U. S. C. § 401

(1964 ed.). See, *e. g.*, cases cited in *United States* v. *Barnett,* 376 U. S. 681, 694, n. 12 (1964). And it matters not that the contempt arises indirectly from proceedings of an administrative agency. Cheff was found in contempt of the Court of Appeals, not of the Commission. The sole ground for the contempt proceedings is stated in the initial order served on Cheff and the other parties to show cause why they should not be adjudged in criminal contempt of *that* court, for violations of *that* court's *pendente lite* order. Indeed, Cheff's answer itself verified that he had not violated, disobeyed, and failed and refused to comply with *"an order of the United States Court of Appeals for the Seventh Circuit entered on August 5, 1959 . . . ."* (Italics added.) In addition, the Court of Appeals itself was quite specific in limiting the contempt charges to "cover the period from August 5, 1959 to the entry of the final judgment [in October 1961] by this court." 341 F. 2d, at 550. As the court clearly had the authority to enter its interlocutory order, Federal Trade Commission Act, § 5, 38 Stat. 719, as amended, 15 U. S. C. § 45 (c) (1964 ed.), it follows that the court has the power to punish for contempt any disobedience of that order.

Cheff's next and chief contention is that criminal contempt proceedings are criminal actions falling within the requirements of Article III and the Sixth Amendment of the Constitution.* Only two Terms ago we held to the contrary in *United States* v. *Barnett, supra;* however, some members of the Court were of the view there that, without regard to the seriousness of the offense, punishment by summary trial without a jury

---

*The relevant portions of these provisions declare:

"The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury . . . ." Art. III, § 2.

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ." Sixth Amendment.

would be constitutionally limited to that penalty provided for petty offenses. 376 U. S., at 694, n. 12. Cheff, however, would have us hold that the right to jury trial attaches in all criminal contempts and not merely in those which are outside the category of "petty offenses."

Cheff's argument is unavailing, for we are constrained to view the proceedings here as equivalent to a procedure to prosecute a petty offense, which under our decisions does not require a jury trial. Over 75 years ago in *Callan* v. *Wilson,* 127 U. S. 540, 557 (1888), this Court stated that "in that class or grade of offences called petty offences, which, according to the common law, may be proceeded against summarily in any tribunal legally constituted for that purpose," a jury trial is not required. And as late as 1937 the Court reiterated in *District of Columbia* v. *Clawans,* 300 U. S. 617, 624, that: "It is settled by the decisions of this Court . . . that the right of trial by jury . . . does not extend to every criminal proceeding. At the time of the adoption of the Constitution there were numerous offenses, commonly described as 'petty,' which were tried summarily without a jury . . . ." See also *Natal* v. *Louisiana,* 139 U. S. 621 (1891); *Lawton* v. *Steele,* 152 U. S. 133, 141–142 (1894); *Schick* v. *United States,* 195 U. S. 65, 68–72 (1904); *District of Columbia* v. *Colts,* 282 U. S. 63, 72–73 (1930). Indeed, Mr. Justice Goldberg, joined by THE CHIEF JUSTICE and MR. JUSTICE DOUGLAS, took the position in his dissenting opinion in *United States* v. *Barnett, supra,* at 751, that "at the time of the Constitution all types of 'petty' offenses punishable by trivial penalties were generally triable without a jury. This history justifies the imposition without trial by jury of no more than trivial penalties for criminal contempts."

According to 18 U. S. C. § 1 (1964 ed.), "[a]ny misdemeanor, the penalty for which does not exceed imprisonment for a period of six months" is a "petty offense."

Since Cheff received a sentence of six months' imprisonment (see *District of Columbia* v. *Clawans, supra,* at 627–628), and since the nature of criminal contempt, an offense *sui generis,* does not, of itself, warrant treatment otherwise (cf. *District of Columbia* v. *Colts, supra*), Cheff's offense can be treated only as "petty" in the eyes of the statute and our prior decisions. We conclude therefore that Cheff was properly convicted without a jury. At the same time, we recognize that by limiting our opinion to those cases where a sentence not exceeding six months is imposed we leave the federal courts at sea in instances involving greater sentences. Effective administration compels us to express a view on that point. Therefore, in the exercise of the Court's supervisory power and under the peculiar power of the federal courts to revise sentences in contempt cases, we rule further that sentences exceeding six months for criminal contempt may not be imposed by federal courts absent a jury trial or waiver thereof. Nothing we have said, however, restricts the power of a reviewing court, in appropriate circumstances, to revise sentences in contempt cases tried with or without juries.

The judgment in this case is

*Affirmed.*

MR. JUSTICE STEWART, joining Part I of MR. JUSTICE HARLAN's separate opinion, concurs in the result.

MR. JUSTICE WHITE took no part in the decision of this case.

MR. JUSTICE HARLAN, concurring in the result in No. 67 and dissenting in Nos. 412 and 442.

By the opinions in these cases, two new limitations on the use of the federal contempt power are inaugurated. In *Cheff,* it is announced that prison sentences for crim-

inal contempt in a federal court must be limited to six months unless the defendant is afforded a trial by jury. In *Shillitani* and *Pappadio,* an automatic "purge" clause and related indicia are found to convert a criminal sentence into a civil sanction which cannot survive the grand jury's expiration. I believe these limitations are erroneous in reasoning and result alike.

## I.

The decision to extend the right to jury trial to criminal contempts ending in sentences greater than six months is the product of the views of four Justices who rest that conclusion on the Court's supervisory power and those of two others who believe that jury trials are constitutionally required in all but "petty" criminal contempts. The four Justices who rely on the supervisory power also find the constitutional question a "difficult" one. *Ante,* at 365. However, as recently as 1958, this Court in *Green* v. *United States,* 356 U. S. 165, unequivocally declared that the prosecution of criminal contempts was not subject to the grand and petit jury requirements of Art. III, § 2, of the Constitution and the Fifth and Sixth Amendments. This doctrine, which was accepted by federal judges in the early days of the Republic [1] and has been steadfastly adhered to in

---

[1] *E. g., Ex parte Burr,* 4 Fed. Cas. 791, 797 (No. 2,186) (C. C. D. C. 1823) (Cranch, C. J.):

"[C]ases of contempt of court have never been considered as crimes within the meaning and intention of the second section of the third article of the constitution of the United States; nor have attachments for contempt ever been considered as criminal prosecutions within the sixth amendment. . . . Many members of the [constitutional] convention were members of the first congress, and it cannot be believed that they would have silently acquiesced in so palpable a violation of the then recent constitution, as would have been contained in the seventeenth section of the judiciary act of 1789 (1 Stat. 73),—which authorizes all the courts of the United

case after case in this Court,[2] should be recognized now as a definitive answer to petitioners' constitutional claims in each of the cases before us.

The prevailing opinion's new supervisory-power rule seems to me equally infirm. The few sentences devoted to this dictum give no reason why a six-month limitation is desirable. Nor is there anything about the sentences actually imposed in these instances that warrants reappraisal of the present practice in contempt sentencing. In *Cheff* itself the sentence was for six months. *Shillitani* and *Pappadio* involved two-year sentences but each was moderated by a purge clause and seemingly in neither case were there disputed facts suitable for a jury. Among the prominent shortcomings of the new rule, which are simply disregarded, is the difficulty it may generate for federal courts seeking to implement locally unpopular decrees. Another problem is in administration: to decide whether to proffer a jury trial, the judge must now look ahead to the sentence, which itself depends on the precise facts the trial is to reveal.

---

States 'to punish by fine and imprisonment, at the discretion of the said courts, all contempts of authority in any cause or hearing before the same,'—if their construction of the constitution had been that which has, in this case, been contended for at the bar."

[2] See *Ex parte Terry*, 128 U. S. 289, 313 (1888) (Harlan, J.); *Savin, Petitioner*, 131 U. S. 267, 278 (1889) (Harlan, J.); *Eilenbecker* v. *Plymouth County*, 134 U. S. 31, 36 (1890) (Miller, J.); *Interstate Commerce Comm'n* v. *Brimson*, 154 U. S. 447, 489 (1894) (Harlan, J.); *Bessette* v. *W. B. Conkey Co.*, 194 U. S. 324, 336–337 (1904) (Brewer, J.); *Gompers* v. *Bucks Stove & Range Co.*, 221 U. S. 418, 450 (1911) (Lamar, J.); *Gompers* v. *United States*, 233 U. S. 604, 610–611 (1914) (Holmes, J.); *Ex parte Hudgings*, 249 U. S. 378, 383 (1919) (White, C. J.); *Myers* v. *United States*, 264 U. S. 95, 104–105 (1924) (McReynolds, J.); *Michaelson* v. *United States*, 266 U. S. 42, 67 (1924) (Sutherland, J. ); *Ex parte Grossman*, 267 U. S. 87, 117–118 (1925) (Taft, C. J.); *Fisher* v. *Pace*, 336 U. S. 155, 159–160 (1949) (Reed, J.); *Offutt* v. *United States*, 348 U. S. 11, 14 (1954) (Frankfurter, J.).

In my view, before this Court improvises a rule necessarily based on pure policy that largely shrugs off history, a far more persuasive showing can properly be expected.

## II.

No less remarkable is the Court's upsetting of the sentences in *Shillitani* and *Pappadio* on the ground that the jailings were really for civil contempt which cannot endure beyond the grand jury's term.[3]  It can hardly be suggested that the lower courts did not intend to invoke the criminal contempt power to keep the petitioners in jail after the grand jury expired; the contrary is demonstrated by the entire record.[4]  Instead, the Court attempts to characterize the proceedings by a supposed primary or essential "purpose" and then lops off so much of the sentences as do not conform to that purpose.  What the Court fails to do is to give any reason in policy, precedent, statute law, or the Constitution for its unspoken premise that a sentencing judge cannot combine two purposes into a single sentence of the type here imposed.

Without arguing about which purpose was primary, obviously a fixed sentence with a purge clause can be said to embody elements of both criminal and civil contempt. However, so far as the safeguards of criminal contempt proceedings may be superior to civil, the petitioners have not been disadvantaged in this regard, nor do they

---

[3] This question was never raised in *Pappadio* nor encompassed by the limited grant of certiorari in that case, see 382 U. S. 916; in *Shillitani*, where the issue is properly before the Court, petitioner filed a certiorari petition discussing the point but tendered no brief on the merits on any phase of the case.

[4] For example, in each case the Judgment and Commitment states that "the defendant is guilty of criminal contempt" and orders him committed "for a period of Two (2) Years, or until further order of this Court," should the questions be answered within that period before the grand jury expires.

claim otherwise. Adding a purge clause to a fixed sentence is a benefit for the petitioners, not a reason for complaint. Similarly the public interest is served by exerting strong pressure to obtain answers while tailoring the length of imprisonment so that it may punish the defendant only for his period of recalcitrance and no more. I see no reason why a fixed sentence with an automatic purge clause should be deemed impermissible.

For the foregoing reasons, I would affirm the judgments in all three cases on the basis of *Green* and leave the authority of that case unimpaired.[5]

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE BLACK concurs, dissenting.

### I.

I adhere to the view expressed in the dissents in *Green* v. *United States,* 356 U. S. 165, 193, and *United States* v. *Barnett,* 376 U. S. 681, 724, 728, that criminal contempt is a "crime" within the meaning of Art. III, § 2, of the Constitution and a "criminal prosecution" within the meaning of the Sixth Amendment, both of which guarantee the right to trial by jury in such cases.[1] Punishment for contempt was largely a minor affair at the time the Constitution was adopted, the lengthy penalties of the sort imposed today being a relatively recent inno-

---

[5] The two-year sentences imposed on Shillitani and Pappadio do not call for the exercise of this Court's corrective power over contempt sentences, see *Green,* 356 U. S., at 187–189; as has been noted, both sentences carried purge clauses.

[1] Although the Sixth Amendment uses somewhat different language than that of Art. III, § 2, there is no reason to believe that the Sixth Amendment was intended to work a change in the scope of the jury trial requirement of Article III. See Frankfurter & Corcoran, Petty Federal Offenses and the Constitutional Guaranty of Trial by Jury, 39 Harv. L. Rev. 917, 968–975 (1926).

vation.[2]   I do not see how we can any longer tolerate an "exception" to the historic guaranty of a trial by jury when men are sent to prison for contempt for periods of as long as four years.[3]   Nor do the consequences of a contempt conviction necessarily end with the completion of serving what may be a substantial sentence.   Indeed the Government in other contexts regards a criminal contempt conviction as the equivalent of a conviction of other serious crimes.

Thus the Attorney General, in an advisory letter dated January 26, 1966, to Deputy Secretary of Defense Cyrus R. Vance, concluded that a conviction for criminal contempt could properly be applied to exclude an Army veteran from burial in Arlington National Cemetery.   Exclusion was based on a regulation (30 Fed. Reg. 8996) which denies burial in a national cemetery to a person

---

[2] *Green* v. *United States, supra,* at 207–208 and n. 21 (dissenting opinion); *United States* v. *Barnett, supra,* at 740–749 (dissenting opinion).   Although Justice Goldberg's use of historical materials in *Barnett* has been subjected to some criticism (see, *e. g.*, Tefft, United States v. Barnett: " 'Twas a Famous Victory," Supreme Court Review 123, 132–133 (1964); Brief for the United States 27–58 and Appendix, *passim, Harris* v. *United States,* 382 U. S. 162), severe penalties in contempt cases in the early days appear, nonetheless, to have been the exception.

[3] See, *e. g., Brown* v. *United States,* 359 U. S. 41 (15 months); *Piemonte* v. *United States,* 367 U. S. 556 (18 months); *Reina* v. *United States,* 364 U. S. 507 (two years); *Green* v. *United States, supra* (three years); *Collins* v. *United States,* 269 F. 2d 745 (three years); *United States* v. *Thompson,* 214 F. 2d 545 (four years).

In the fiscal year ending June 30, 1962, a total of 21 people convicted by a federal court of contempt were received by the federal prison system.   Of these, the *average* sentence was 6.4 months.   Sentences of eight of these prisoners exceeded six months; three prisoners had sentences exceeding one year, and of these two prisoners had sentences of two years or more.   The Federal Prison System—1964, Hearing before the Subcommittee on National Penitentiaries of the Senate Committee on the Judiciary, 88th Cong., 2d Sess. (Jan. 22, 1964), p. 10.

"who is convicted in a Federal . . . court of a *crime or crimes,* the result of which is . . . a sentence to imprisonment for 5 years or more . . . ." (Emphasis added.) The Attorney General stated: "Criminal contempt is regarded as a 'crime' for most purposes [citing cases], and no reason is apparent why, for purposes of the interment regulation, criminal contempt should be distinguished from any other infraction of law punishable by imprisonment."

There is in my view no longer any warrant for regarding punishment for contempt as a minor matter, strictly between the court and the accused. "We take a false and one-sided view of history when we ignore its dynamic aspects. The year books can teach us how a principle or a rule had its beginnings. They cannot teach us that what was the beginning shall also be the end." Cardozo, The Growth of the Law 104–105 (1924).

## II.

The prevailing opinion today suggests that a jury is required where the sentence imposed exceeds six months but not when it is less than that period. This distinction was first noted in a footnote in the *Barnett* case, where the Court drew an analogy to prosecutions for "petty offenses" which need not be tried by jury.[4] The prevailing opinion today seeks to buttress this distinction by reference to 18 U. S. C. § 1, which declares that an offense the penalty for which does not exceed six months is a

---

[4] The Court put the matter thus:

"However, our cases have indicated that, irrespective of the severity of the offense, the severity of the penalty imposed, a matter not raised in this certification, might entitle a defendant to the benefit of a jury trial. . . . In view of the impending contempt hearing, effective administration of justice requires that this *dictum* be added: Some members of the Court are of the view that, without regard to the seriousness of the offense, punishment by summary trial without a jury would be constitutionally limited to that penalty provided for petty offenses." *Supra,* at 695, n. 12.

petty offense. It studiously avoids embracing the view expressed by Mr. Justice Harlan (*ante,* at 380), that in no event does the Constitution require a jury trial for contempt. But I do not see any lines of constitutional dimension that separate contempt cases where the punishment is less than six months from those where the punishment exceeds that figure. That is a mechanical distinction—unsupported by our cases in either the contempt field or in the field of "petty offenses."

The difficulty with that analysis lies in attempting to define a petty offense merely by reference to the sentence actually imposed. This does not square with our decisions regarding the "petty offense" exception to the jury trial requirement. *First,* the determination of whether an offense is "petty" also requires an analysis of the nature of the offense itself; even though short sentences are fixed for a particular offense a jury trial will be constitutionally required if the offense is of a serious character. *Second,* to the extent that the penalty is relevant in this process of characterization, it is the *maximum potential* sentence, not the one actually imposed, which must be considered.

The notion that the trial of a petty offense could be conducted without a jury was first expounded by this Court in *Callan* v. *Wilson,* 127 U. S. 540 (1888).[5] The Court, "conceding that there is a class of petty or minor offences, not usually embraced in public criminal statutes, and not of the class or grade triable at common law by a jury," held that the offense charged—conspiracy—was not among them. *Id.,* at 555. In *Natal* v. *Louisiana,*

---

[5] The petty offense exception is treated in Frankfurter & Corcoran, Petty Federal Offenses and the Constitutional Guaranty of Trial by Jury, 39 Harv. L. Rev. 917 (1926). Their conclusion, long accepted in the decisions of this Court, that jury trials are not required in such cases is challenged in Kaye, Petty Offenders Have No Peers, 26 Chi. L. Rev. 245 (1959).

139 U. S. 621, the Court for the first time held a particular offense "petty." This was a local ordinance which forbade the operation of a private market within six squares of a public market. The maximum penalty was a $25 fine (or 30 days' imprisonment in the event the fine was not paid).[6] And in *Schick* v. *United States,* 195 U. S. 65, the Court held that the knowing purchase of unstamped oleomargarine was a petty offense. The maximum penalty was a $50 fine.

None of these cases provides much guidance for those seeking to locate the line of demarcation between petty offenses and those more serious transgressions for which a jury trial is required. In *District of Columbia* v. *Colts,* 282 U. S. 63, the Court attempted to set out some general considerations. The offense was reckless driving at an excessive speed; the maximum punishment under the statute (for a first offender) was a $100 fine and 30 days in jail. Although the penalty was light, the Court thought the offense too serious to be regarded as "petty":

> "Whether a given offense is to be classed as a crime, so as to require a jury trial, or as a petty offense, triable summarily without a jury, depends primarily upon the nature of the offense. The offense here charged is not merely *malum prohibitum,* but in its very nature is *malum in se.* It was an indictable offense at common law . . . when horses, instead of gasoline, constituted the motive power. . . ." *Id.,* at 73.

The most recent case is *District of Columbia* v. *Clawans,* 300 U. S. 617, where the offense charged was

---

[6] This was, of course, not a case tried in the federal courts. But the Court did not decide the case on the ground that the Constitution does not require the States to afford jury trials in criminal cases; it took, instead, the narrower ground that this was a petty offense.

that of engaging in a particular business without a license. The maximum penalty was $300 or 90 days in jail. Clawans was given a $300 fine but only 60 days in jail. The Court held that this was a "petty offense" and thus that no jury was required. The offense, the Court noted, was not a crime at common law; and today it is only an infringement of local police regulations, the offense being "relatively inoffensive." *Id.,* at 625. But, the Court added, "the severity of the penalty [is] an element to be considered." *Ibid.* Looking to the maximum penalty which might be imposed—90 days in prison—the Court concluded that this was not so severe as to take the offense out of the category of "petty." Noting that in England, and even during this country's colonial period, sentences longer than 90 days were imposed without a jury trial, the Court assumed that penalties then thought mild "may come to be regarded as so harsh as to call for the jury trial." *Id.,* at 627. The Court added:

> "[W]e may doubt whether summary trial with punishment of more than six months' imprisonment, prescribed by some pre-Revolutionary statutes, is admissible without concluding that a penalty of ninety days is too much. Doubts must be resolved, not subjectively by recourse of the judge to his own sympathy and emotions, but by objective standards such as may be observed in the laws and practices of the community taken as a gauge of its social and ethical judgments." *Id.,* at 627–628.

Resolution of the question of whether a particular offense is or is not "petty" cannot be had by confining the inquiry to the length of sentence actually imposed. That is only one of many factors. As the analysis of the Court in *Clawans* demonstrates, the character of the offense itself must be considered. The relevance of the

maximum possible sentence is that it may be "taken as a gauge of [the] social and ethical judgments" of the community. *Id.*, at 628. Had the potential sentence in the *Clawans* case been of considerable length, the Court presumably would have concluded that the legislative judgment—that long sentences were appropriate for violations of the licensing law—precluded treating the offense as "petty." But the converse is not always true: an offense the penalty for which is relatively light is not necessarily "petty," as *District of Columbia* v. *Colts, supra,* demonstrates.

The principal inquiry, then, relates to the character and gravity of the offense itself. Was it an indictable offense at common law? Is it *malum in se* or *malum prohibitum?* What stigma attaches to those convicted of committing the offense?[7] The *Barnett* dictum, though accepting the relevance of the petty offense cases, errs in assuming that these considerations are irrelevant.[8]

The dictum in *Barnett* errs, further, because it looks to the length of sentence *actually imposed*, rather than the potential sentence. The relevance of the sentence, as we have seen, is that it sheds light on the seriousness with which the community and the legislature regard the

---

[7] "Broadly speaking, acts were dealt with summarily which did not offend too deeply the moral purposes of the community, which were not too close to society's danger, and were stigmatized by punishment relatively light." Frankfurter & Corcoran, *supra,* at 980–981.

[8] "Some members of the Court are of the view that, *without regard to the seriousness of the offense,* punishment by summary trial without a jury would be constitutionally limited to that penalty provided for petty offenses." 376 U. S., at 695. (Emphasis added.) To the extent that this merely reflects the *Clawans* principle that no offense which carries a substantial penalty can be "petty," the Court was correct. Yet, quite apart from the question of punishment, a jury trial is constitutionally required where the offense is of a serious character.

offense. Reference to the sentence actually imposed in a particular case cannot serve this purpose. It is presently impossible to refer to a "maximum" sentence for most contempts, for there is none; Congress has left such matters to the discretion of the federal courts.[9]

The offense of criminal contempt is, of course, really several diverse offenses all bearing a common name. Some involve conduct that violates courtroom decorum. At times the offender has insulted the court from a distance. Others are instances where an adamant witness refuses to testify. Still others, like the present case, involve disobedience of a court order directing parties to cease and desist from certain conduct pending an appeal. While some contempts are fairly minor affairs, others are serious indeed, deserving lengthy sentences. So long as all contempts are lumped together, the serious nature of some contempts and the severity of the sentences commonly imposed in such cases control the legal character of all contempts. None can be regarded as petty. Distinctions between contempts which, after the fact, draw a six-month or greater sentence and those which do not are based on constitutionally irrelevant factors and seem irrelevant to the analysis.

### III.

The Constitution, as I see it, thus requires a trial by jury for the crime of criminal contempt, as it does for all other crimes. Should Congress wish it, an exception could be made for any designated class of contempts which, all factors considered, could truly be characterized as "petty." [10] Congress has not attempted to isolate and

---

[9] 18 U. S. C. § 402 (1964 ed.).

[10] Congress might, for example, determine that breaches of court decorum are generally of so minor a nature as to render it advisable to forgo the possibility of any except minor penalties in favor of maintaining procedures for quick punishment (see Fed. Rule Crim.

define "petty contempts." Do we have power to undertake the task of defining a class of petty contempts and to fix maximum punishments which might be imposed?

It would be a project more than faintly reminiscent of declaring "common-law crimes," a power which has been denied the federal judiciary since the beginning of our republic. See *United States* v. *Hudson,* 7 Cranch 32; *United States* v. *Gradwell,* 243 U. S. 476, 485. It is, of course, true that in the *Hudson* case itself, the Court—while holding the judiciary powerless to exercise a common-law criminal jurisdiction—set contempt apart from this general restriction:

> "Certain implied powers must necessarily result to our Courts of justice from the nature of their institution. But jurisdiction of crimes against the state is not among those powers. To fine for contempt—imprison for contumacy—inforce the observance of order, &c. are powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others: and so far our Courts no doubt possess powers not immediately derived from statute; but all exercise of criminal jurisdiction in common law cases we are of opinion is not within their implied powers." *Id.,* at 34.[11]

Proc. 42 (a); *Harris* v. *United States,* 382 U. S. 162) which are said to be necessary to achieve "summary vindication of the court's dignity and authority." *Cooke* v. *United States,* 267 U. S. 517, 534. This might be a class of "petty contempts" for which the maximum penalty would be slight and for which trial by jury would not be required. *Quaere,* whether imposition of a prison term would ever be consistent with a "petty" offense. Cf. Kaye, Petty Offenders Have No Peers, 26 Chi. L. Rev. 245, 275–277 (1959).

[11] And see 18 U. S. C. § 402, which allows "all other cases of contempt not specifically embraced in this section [to be] punished in conformity to the prevailing usages at law."

The prevailing opinion today does not take that course. It does not undertake to classify different kinds of contempt in light of the nature and gravity of the offense. It permits the imposition of punishment without the benefit of a trial by jury in all contempt cases where the punishment does not exceed six months. For the reasons stated, I believe that course is wrong—dangerously wrong. Until the time when petty criminal contempts are properly defined and isolated from other species of contempts, I see no escape from the conclusion that punishment for all manner of criminal contempts can constitutionally be imposed only after a trial by jury.