**UNITED STATES of America,**
**Petitioner-Appellee,**

v.

**R. L. POLK AND COMPANY,**
**Respondent-Appellant.**

**No. 20419.**

United States Court of Appeals,
Sixth Circuit.

Feb. 19, 1971.

W. Robert Chandler, Detroit, Mich., for respondent-appellant; Cross, Wrock, Miller & Vieson, Detroit, Mich., on brief.

Gregory Hovendon and Leo A. Roth, Attys., Antitrust Division, Dept. of Justice, Washington, D. C., for petitioner-appellee; Richard W. McLaren, Asst. Atty. Gen., Lee A. Rau, Atty., Dept. of Justice, Washington, D. C., James H. Brickley, U. S. Atty., Detroit, Mich., on brief.

Before PECK, BROOKS and MILLER, Circuit Judges.

JOHN W. PECK, Circuit Judge.

In settlement of a civil antitrust action brought by the government, the appellant corporation, in 1955, entered into a consent decree which enjoined it from engaging in certain practices involving the compilation and selling of city directories. In 1965, the government instituted civil and criminal contempt proceedings against the appellant in the District Court, alleging that the appellant had wilfully violated numerous provisions of the 1955 consent decree.

The criminal contempt charges against the appellant were tried to the District Court sitting without a jury, the appellant having neither expressly requested nor waived a jury trial, and in December, 1967, the District Court found the appellant guilty of criminal contempt with respect to one of the alleged violations of the 1955 consent decree. The civil contempt allegations, which are not involved in the present appeal, were separately disposed of, and, approximately two years later (on October 29, 1969) the Court imposed a fine of $35,000 upon the appellant as the penalty for the one instance of criminal contempt. Shortly thereafter, the appellant moved to correct the sentence pursuant to Rule 35, F.R. Crim.P., arguing that under the rule of Cheff v. Schnackenberg, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966), a fine in excess of $500 could not be imposed absent a jury trial or a waiver thereof. This appeal is from the District Court's denial of that motion.

Both of the parties rely on the Supreme Court's decision in Cheff v. Schnackenberg, *supra*, as largely determinative of the issues presented herein. Although earlier decisions (the most recent of which was United States v. Barnett, 376 U.S. 681, 84 S.Ct. 984, 12 L.Ed.2d 23 (1964)) had held that there was no right to a jury trial in criminal contempt proceedings, the question was again presented in *Cheff* whether the denial of a jury trial to an individual charged with criminal contempt deprived that individual of his rights guaranteed by Article III and the Sixth Amendment of the Constitution. Without directly responding to the constitutional question, the Court held in *Cheff* that the individual defendant charged with criminal contempt had not been denied his right to a jury trial where the penalty imposed, six months imprisonment, was no greater than that imposed for petty offenses because historically there was no right to a jury in the trial of petty offenses.

However, recognizing the constitutional uncertainties which could arise as a result of its limitation of its holding to cases where a sentence not exceeding six months imprisonment was imposed, the Court went further, and, "in the exercise of the Court's supervisory power," ruled that in the trial of criminal contempts, "sentences exceeding six months for criminal contempt may not be imposed by federal courts absent a jury trial or waiver thereof." 384 U.S. at 380, 86 S. Ct. at 1526.

Thus, by holding that the constitutional guarantees of the right of a jury trial did not attach to the trial of "petty" criminal contempts, it was not necessary for the Supreme Court in *Cheff* to decide whether those rights attached to the trial of "serious" criminal contempts. When the latter question was presented to the Court some two years later, the Court adhered to the "petty-serious" distinction previewed in *Cheff* and held that the right to a jury trial did apply to the trial of serious criminal contempts. Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968). To determine whether the contempt was to be treated as serious or petty, the Court looked to the penalty actually imposed as "the best evidence of the seriousness of the offense." Bloom v. Illinois, *supra*, at 211, 88 S.Ct. at 1487. Subsequent decisions have reaffirmed the "petty-serious" test to determine the right to a jury both in the trial of criminal contempts (Frank v. United States, 395 U.S. 147, 89 S.Ct. 1503, 23 L.Ed.2d 162 (1969)), and in criminal prosecutions generally (Baldwin v. New York, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970)), holding that where the potential or actual sentence of imprisonment exceeds six months the offense must be considered serious and the individual accorded the right to trial by jury. But in no case has the Supreme Court indicated whether the rule of *Cheff* is to be applied to corporations charged with criminal contempt, nor has the Court established guidelines as to the penalty which may be imposed upon a corporation charged with criminal contempt before the contempt must be considered serious.

The initial question presented, therefore, is whether the rule of *Cheff*, that absent a jury trial or waiver thereof the penalty imposed upon an individual convicted of criminal contempt may be no greater than the penalty traditionally reserved for petty offenses, extends to corporations charged with criminal contempt.* We hold that it does and reject the government's simplistic argument that since the rule of *Cheff* was phrased in terms of imprisonment of individuals it has no applicability to corporations which cannot be imprisoned. Such an argument not only ignores the fundamental principle that corporations enjoy the same rights as individuals to trial by jury, but it also overlooks the Supreme Court's subsequent construction of *Cheff*. Therein there is nothing to indicate that the *Cheff* rule was to apply only to individual contemnors. For example, in Frank v. United States, *supra*, the Court stated:

"In *Cheff*, this Court undertook to categorize criminal contempts for purposes of the right to trial by jury. In the exercise of its supervisory power over the lower federal courts, the Court decided by analogy to 18 U.S.C. § 1 that penalties not exceeding those authorized for petty offenses could be imposed in criminal contempt cases without affording the right to a jury trial." 395 U.S. at 151, 89 S.Ct. at 1506.

We must therefore conclude that since there was neither a jury trial nor a waiv-

---

* Such a determination is necessary, of course, only in cases such as this which arose prior to the Supreme Court's decisions in Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968) and Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). There is no question but that in cases arising after those decisions a corporation would have the right to a jury in the trial of a serious criminal contempt. *See* DeStefano v. Woods, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968).

er thereof herein, the District Court was precluded from imposing a penalty upon the appellant greater than that which could be characterized as petty. The next question is whether the $35,000 fine imposed by the District Court can be so characterized.

■■ The appellant contends that 18 U.S.C. § 1, upon which the Court in *Cheff* relied for a definition of a petty offense, is controlling. That section defines a petty offense as "[a]ny misdemeanor, the penalty for which does not exceed imprisonment for a period of six months or a fine of not more than $500, or both, * * *." Thus, the appellant contends that imposition of a fine in excess of $500 no longer permits the offense to be characterized as petty, and that therefore its motion to correct the sentence and reduce the fine to $500 should have been granted. Appellant's position has strong support. In Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), in which the Supreme Court held that the right to trial by jury attached to all state prosecutions for serious offenses, the Court stated:

"In determining whether the length of the authorized prison term or the seriousness of other punishment is enough in itself to require a jury trial, we are counseled by District of Columbia v. Clawans, supra, [300 U.S. 617, 57 S.Ct. 660, 81 L.Ed. 843 (1937)] to refer to objective criteria, chiefly the existing laws and practices in the Nation. *In the federal system, petty offenses are defined as those punishable by no more than six months in prison and a $500 fine.*" 391 U.S. at 161–162, 88 S.Ct. at 1453, 1454 (Emphasis supplied.)

The government's response is that the "petty-serious" determination must be made in light of all the surrounding circumstances and is not limited to a mechanical application of the standards of 18 U.S.C. § 1. From the point of view of the result of this case, the government's argument is appealing. A fine of $500 upon a corporation of the size and worth of the appellant, which, at the time of the contempt proceedings below, had annual sales of approximately $50,000,-000 and a net worth of approximately $20,000,000, can have no more than inconsequential impact.

Nevertheless, we conclude that the test proposed by the appellant must be controlling. As indicated above, we are instructed by Duncan v. Louisiana, *supra,* and District of Columbia v. Clawans, 300 U.S. 617, 57 S.Ct. 660, 81 L.Ed. 843 (1937), to look to the objective criteria found in the existing laws of the nation. However, no existing laws of the nation, other than 18 U.S.C. § 1, have been disclosed to us which would provide any other objective standard of what constitutes a "serious" financial penalty to a corporation. It is undoubtedly true, as the government contends, that the seriousness of a financial penalty imposed upon a large corporation may be substantially different than the seriousness of a financial penalty imposed upon an individual, but we are given no satisfactory objective standard by which to make such a comparison or for comparing the seriousness of such penalties as between corporations.

The essence of the government's position is that the seriousness of the offense is to be judged by the accused contemnor's ability to withstand any penalty which might be imposed. Such a subjective standard is no more acceptable when applied to corporate contemnors than it would be if applied to individual contemnors, and it is in direct contravention of the teaching of *Duncan* and *Clawans, supra.* Accordingly, in the absence of a more satisfactory objective standard, we are constrained to hold that a fine upon a corporation in excess of $500 no longer permits the underlying offense to be characterized as petty, from which it follows that the District Court should have granted the appellant's motion to reduce the fine imposed to $500.

The judgment of the District Court is vacated and the cause is remanded with instructions to reduce the penalty imposed to a fine of $500.