[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 05-11141
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 18, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-60231-CR-WJZ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHRISTOPHER LOVE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(May 18, 2006)

Before BLACK, BARKETT and COX, Circuit Judges.

PER CURIAM:

Appellant Christopher Love appeals from his sentence imposed after pleading guilty to one count of contempt, in violation of 18 U.S.C. § 401(3). The district court sentenced Love to 45 days' incarceration followed by five years' supervised release. Contrary to his representations before the district court and for the first time on appeal, Love argues the district court exceeded its authority when it imposed the term of supervised release. We conclude the error, if any, was invited and affirm.

## I. BACKGROUND

On April 3, 2000, the Federal Trade Commission (FTC) filed a lawsuit in the United States District Court for the Southern District of Florida against Federal Data Service, Inc. (FDS) and others, alleging violation of Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair or deceptive acts or practices in or affecting commerce." On April 11, 2000, the district court issued an ex parte temporary restraining order (TRO) enjoining the defendants "and their successors, assigns, officers, agents, servants, employees, and those other persons in active concert or participation with them who receive actual notice" from making misrepresentations in telemarketing goods and services

2

relating to employment opportunities with the federal government.[1]  Love, a manager for FDS, was present when the FTC served the TRO and received actual notice of the TRO and its provisions at that time.  On May 3, 2000, while the TRO was in effect, Love and another person formed a new corporation and proceeded to violate the TRO.

On September 16, 2004, the Government filed a one count information charging Love with knowingly and willfully violating the TRO, in violation of 18 U.S.C. § 401(3).[2]  Love entered into a plea agreement with the Government and pled guilty to the offense.  In the plea agreement, Love acknowledged the district court could "order a term of supervised release of up to five years" in addition to a term of imprisonment.  At his plea colloquy, Love again said he understood his sentence might include a term of supervised release of up to five years.

---

[1]The FTC alleged the defendants placed classified ads in newspapers around the country, falsely claiming U.S. Postal Service positions and federal wildlife service jobs were available locally and misrepresenting the starting salaries for these positions.  When customers called the toll-free number for more information, the defendants told them that for a fee they could receive a list of available postal service or wildlife service jobs, as well as exam information and preparation materials.  The defendants falsely told customers they were likely to obtain a job if they purchased the materials and that the fee was refundable if they were unsuccessful.

[2]18 U.S.C. § 401 reads, in relevant part:
A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . .
(3) Disobedience or resistence to its lawful writ, process, order, rule, decree, or command.

3

At sentencing, Love objected to the portion of the Presentence Investigation Report (PSI) stating he was ineligible for probation because contempt is a Class A felony. *See* 18 U.S.C. § 3561(a)(1) (providing for probation unless the offense is a Class A felony). He did not object, however, to the PSI's determination that the court could impose a term of supervised release of up to five years. The district court continued the sentencing hearing and directed the parties to brief whether probation was available.

When the sentencing hearing resumed, the court ruled Love's offense was a Class A felony and, therefore, Love was ineligible for probation. Love's counsel then repeatedly requested the court impose a sentence of time served followed by a term of supervised release. The court sentenced Love to 45 days' incarceration followed by five years of supervised release.[3] Love does not challenge the district court's ruling regarding his ineligibility for probation. Instead, he claims the district court erred in imposing the term of supervised release.

## II. DISCUSSION

Love first argues the court may not impose any term of supervised release for a violation of § 401. He points out § 401 itself does not authorize supervised

---

[3]The court calculated an advisory Sentencing Guidelines range of six to twelve months' incarceration, based on a total offense level of 10 and a criminal history category of I. *See* U.S.S.G. § 2J1.2 (2000) (setting forth Guidelines for obstruction of justice).

4

release; rather, the statute provides the court may punish contempt by "fine or imprisonment, or both." Although he acknowledges 18 U.S.C. § 3583 authorizes supervised release for most offenses,[4] he contends the statute is inapplicable to criminal contempt because it mentions only felonies and misdemeanors, and contempt is an offense *sui generis*, neither felony nor misdemeanor. *See Cheff v. Schnackenberg*, 384 U.S. 373, 380, 86 S. Ct. 1523, 1526 (1966) (noting contempt is an offense *sui generis*); *see also United States v. Holmes*, 822 F.2d 481, 493-94 (5th Cir. 1987) (holding a statute authorizing fines for felonies or misdemeanors was inapplicable to criminal contempt because contempt is neither a felony nor a misdemeanor).

Alternatively, Love argues the maximum term of supervised release he could receive is one year. He contends that if contempt can be classified as a felony or a misdemeanor pursuant to the offense classification scheme set forth in 18 U.S.C. § 3559(a),[5] it is in his case a misdemeanor, in light of either the

---

[4] 18 U.S.C. § 3583(a) reads, in pertinent part: "The court, in imposing a sentence to a term of imprisonment for a felony or a misdemeanor, may include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment . . . ."

[5] 18 U.S.C. § 3559(a) reads, in pertinent part:
An offense that is not specifically classified by a letter grade in the section defining it, is classified if the maximum term of imprisonment authorized is –
(1) life imprisonment, or if the maximum penalty is death, as a Class A felony;
. . .

applicable Guidelines range, *see United States v. Carpenter*, 91 F.3d 1282, 1285

(9th Cir. 1996) (holding "contempt should be classified for sentencing purposes

according to the applicable Guidelines range for the most nearly analogous

offense"), or the actual term of incarceration he received, *see Cheff*, 384 U.S. at

380, 86 S. Ct. at 1526 (classifying contempt for purposes of the Sixth Amendment

according to the length of incarceration imposed).  He submits we should decline

to read § 3559(a)(1) as automatically classifying every instance of contempt a

Class A felony simply because, in the absence of an express statutory maximum

term of imprisonment in § 401, the theoretical maximum term is life in prison.  *See*

*Carpenter*, 91 F.3d at 1284 (rejecting the contention "all criminal contempts

should be treated as Class A felonies").  According to Love's alternative

argument, his sentence could include a maximum of only one year of supervised

release under § 3583(b)(3).[6]

---

(6) one year or less but more than six months, as a Class A misdemeanor;
(7) six months or less but more than thirty days, as a Class B misdemeanor . . . .

[6]18 U.S.C. § 3583(b) provides, in relevant part:
Except as otherwise provided, the authorized terms of supervised release are –
(1) for a Class A or B felony, not more than five years;
. . .
(3) for a Class E felony, or for a misdemeanor (other than a petty offense), not
more than one year.

We do not reach the merits of Love's arguments because we conclude Love induced or invited the ruling he now claims was error. "It is a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party." *United States v. Ross*, 131 F.3d 970, 988 (11th Cir. 1997) (quotations omitted). "The doctrine of invited error is implicated when a party induces or invites the district court into making an error." *United States v. Stone*, 139 F.3d 822, 838 (11th Cir. 1998). "Where invited error exists, it precludes a court from invoking the plain error rule and reversing." *United States v. Silvestri*, 409 F.3d 1311, 1327 (11th Cir. 2005) (quotations omitted).

Love induced or invited the district court to impose a sentence that included a term of supervised release. In his plea agreement and again at the plea colloquy, he expressly acknowledged the court could impose a term of supervised release of up to five years. At his sentencing, he did not object to a sentence including supervised release. To the contrary, Love's counsel repeatedly requested that in lieu of additional jail time the court sentence Love to time served followed by supervised release, and even suggested the court impose a term of two

7

years' supervised release.[7]  Thus, Love is precluded from claiming the court erred in sentencing him to a term of five years' supervised release.  *Id.*

AFFIRMED.

---

[7]We count at least five instances during sentencing where Love's counsel requested supervised release:

> [COUNSEL]: Your Honor, let me just – I heard the Court say that the – that it either has to be a fine or a jail sentence.  I was – I was wondering whether supervised release is an option here. . . .
>
> And I – And I was hoping that maybe the Court could sentence him to time served followed by supervised release, or structure a sentence that way. . . .
> THE COURT: So you are suggesting a term of imprisonment of time served.
> [COUNSEL]: Followed by supervised release with a special condition of six months home confinement or whatever the judge thinks is reasonable under the facts and circumstances of the case.
> . . .
> [COUNSEL]: So I'm asking that in light of what we recommended previously that he be sentenced to some term of supervision.  Whether we call it probation or supervised release . . . .
> [COUNSEL]: . . . I am thinking about another way to resolve the dilemma, your Honor, is what I'm saying.
> THE COURT: All right.
> [COUNSEL]: We sentence[] him to time served and impose two years of supervised release . . . .

**BARKETT, Circuit Judge, specially concurring:**

I agree that Love is precluded from contesting his five-year term of supervised release because he invited the district court to impose that part of his sentence. Nonetheless, the present appeal draws our attention to serious confusion about the proper classification of criminal contempt for sentencing purposes. Thus I would address the question,[8] and hold that criminal contempt, as an offense *sui generis,* cannot be branded a Class A felony in every instance.

The government argues that criminal contempt is properly classified a Class A felony because 18 U.S.C. § 3559(a) provides a statutory framework for the classification of offenses based upon the maximum authorized sentence, and that this framework applies even when even when a particular offense lacks a specifically named statutory maximum. Mail fraud, for example, is undoubtedly a felony even though – or indeed, precisely because – the corresponding statute, 18 U.S.C. § 1341, sets no maximum penalty and does not specify whether the crime is a felony or misdemeanor. But the government's theory falters on this very

_____

[8] Although this Court normally declines to address the existence of error where an alleged error has been invited, it is not compelled to do so. *See, e.g.*, *Glassroth v. Moore*, 335 F.3d 1282, 1289-90 (11th Cir. 2003) (adopting Tenth Circuit's holding on evidentiary claim but concluding "in any event" that alleged error was invited); *Ford ex rel. Estate of Ford v. Garcia*, 289 F.3d 1283, 1295 (11th Cir. 2002) ("*declin[ing]* to review for reversible error" where error was invited) (emphasis added); *U.S. v. Hansen*, 262 F.3d 1217, 1248 (11th Cir. 2001) ("Under the invited error doctrine, we will *generally* not review an error induced or invited by a party . . .") (emphasis added).

analogy.  However different may be individual instances of mail fraud, the substantive offense – the elements which make mail fraud criminal by law – are always the same, whereas the offense of criminal contempt encompasses a vast array of possible underlying substantive offenses.  As at least one Court has recognized, "[n]o ceiling is imposed on the sentence for Class A felonies because Congress views all such felonies as extraordinarily serious crimes.  Criminal contempts, in contrast, include a broad range of conduct, from trivial to severe." *See United States v. Carpenter*, 91 F.3d 1282, 1284 (9th Cir. 1996).

Under the government's interpretation, the relatively petty offense that resulted in Love's contempt conviction – petty enough, at least, for Love to have received a mere 45-day prison sentence – could have been punished with life imprisonment if the trial court, in its discretion, wished to impose that penalty.  Such an absurd sentence would raise serious proportionality concerns under the Constitution.  *See Atkins v. Virginia*, 536 U.S. 304, 311 (2002) ("it is a precept of justice that punishment for crime should be graduated and proportioned to [the] offense.") (citing *Weems v. United States*, 217 U.S. 349, 367 (1910)).  There is no reason why Title 18 must be read to permit such a constitutionally suspect result: "where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions

10

are avoided, our duty is to adopt the latter." *Jones v. United States*, 529 U.S. 848, 857 (2000). Similarly, there is no reason why Title 18 must be read to permit results that are, if not unconstitutional under the Eighth Amendment, patently absurd. *See In re International Administrative Services, Inc.*, 403 F.3d 689, 707-08 (11th Cir. 2005) (interpreting a federal statute so as to avoid an "absurd result"); *see also Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267, 1276 ("the Supreme Court has repeatedly held that "[i]f possible, [a court] should avoid construing [a] statute in a way that produces . . . absurd results.") (citing *Dewsnup v. Timm*, 502 U.S. 410, 427 (1992).

In *United States v. Carpenter*, the Ninth Circuit successfully avoided a constitutionally feeble or absurd reading of the criminal contempt statute. Like the instant case, *Carpenter* involved a defendant who appealed his sentence for criminal contempt, consisting of light incarceration and several years suspended release. Like Love, defendant Carpenter argued that contempt should be classified based upon the sentence actually imposed; because Carpenter's contempt violation would have been a "petty" offense under this approach, he argued, like Love, that the court was not authorized to impose supervised release at all. *Id.* at 1283. The government advanced in *Carpenter* the same argument it raises before this Court –

11

namely, that all criminal contempts are Class A felonies by virtue of the fact that no maximum penalty is indicated by statute. *Id.* at 1284.

The *Carpenter* Court rejected both positions, however, holding that criminal contempt should be classified for sentencing according to the applicable Guidelines range for the most nearly analogous offense. *Id.* at 1285 (holding that where the Guidelines range was six to 12 months for the underlying offense, the contempt should be classified as a "Class A misdemeanor"). With regard to the government's argument, the Court said that "[i]t would be unreasonable to conclude that by authorizing an open-ended range of punishments to enable courts to address even the most egregious contempts appropriately, Congress meant to brand all contempts as serious and all contemnors as felons." *Carpenter*, 91 F.3d at 1284 (citing *Frank v. United States*, 395 U.S. 147, 149 (1969) (failure to establish maximum sentence for contempt may reflect Congress's "recognition of the scope of criminal contempt") and U.S.S.G. § 2J1.1 comment n. 1 (rejecting any guideline range for criminal contempt "[b]ecause misconduct constituting contempt varies significantly.").

Although it is true that *Carpenter* was decided when the Sentencing Guidelines were mandatory, the logic of the decision is not impaired by the Guidelines' recent fate. As the Ninth Circuit explained, the Guideline ranges are a

useful and reasonable basis for classifying particular instances of criminal contempt because they are "directly linked to the severity of the offense[, . . .] provid[ing] the best analogy to the classification scheme set out in 18 U.S.C. § 3559." *Id.* at 1285. That is to say, the *Carpenter* approach avoids the absurd result of branding all criminal contempts Class A felonies, while simultaneously achieving, or at least approximating, the intent of Congress. Thus *Carpenter*'s reasoning presumably could survive even in the absence of the Guidelines themselves; in such case, a sentencing court would look to the most closely analogous offense for which federal law mandates or recommends a maximum sentence.

I observe that this proposed resolution precisely mirrors the joint recommendation contained in Love's plea agreement but rejected by the district court. In that agreement, the United States and the defendant urged the court to formulate the "sentence to be imposed" by reference to the Sentencing Guideline's determination of the base offense level for "the most analogous offense."