Roy O. HOFFMAN, Director, Region 20, NLRB, Plaintiff-Appellee,

v.

INTERNATIONAL LONGSHOREMEN'S & WAREHOUSEMEN'S UNION, LOCAL NO. 10, Defendant-Appellant.

Roy O. HOFFMAN, Director, Region 20, NLRB, Plaintiff-Appellee,

v.

BROTHERHOOD OF TEAMSTERS & AUTO TRUCK DRIVERS LOCAL NO. 70, IBTCWHA, and James R. Muniz, Defendants-Appellants.

Roy O. HOFFMAN, Director, Region 20, NLRB, Plaintiff-Appellee,

v.

SAN FRANCISCO TYPOGRAPHICAL UNION LOCAL NO. 21, etc., et al., Defendants-Appellants.

Nos. 71–1818 to 71–1823, 71–1827 to 71–1829 and 71–2073.

United States Court of Appeals, Ninth Circuit.

Jan. 25, 1974.

As Amended March 7, 1974.

Rehearings Denied in No. 71–1818– 71–1823, 71–1827 March 26, 1974.

Norman Leonard (argued) of Gladstein, Leonard, Patsey & Andersen, San Francisco, Cal., for defendant-appellant ILWU Local 10.

Victor J. Van Bourg, Stewart Weinberg (argued) of Levy & Van Bourg, San Francisco, Cal., for defendant-appellant Teamsters Local 70.

Duane B. Beeson (argued) of Brundage, Neyhart, Grodin & Beeson, San Francisco, Cal., Cecil F. Poole of Jacobs, Sills & Coblentz, San Francisco, Cal., for defendant-appellant San Fancisco Typo. Union Local 21.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Julius G. Serot, NLRB, Washington, D. C., Milo V. Price, Walter L. Kintz, Jr., W. David Smullin, (Roy Hoffman, Director, Region 20) NLRB, San Francisco, Cal., Marvin Roth, Deputy Asst. Gen. Counsel, Washington, D. C. (argued) Nathan R. Berke of Severson, Werson, Berke & Melchior, William B. Irvin of McLaughlin & Irvin, San Francisco, Cal., for plaintiff-appellee.

Before MERRILL and TRASK, Circuit Judges, and KELLEHER,* District Judge.

TRASK, Circuit Judge:

This is an appeal from two judgments holding appellant unions and union officers guilty of civil contempt and a portion of the appellants guilty of criminal contempt. The contempt actions were based upon alleged violations of two separate injunctions issued by the District Court under section 10(*l*) of the National Labor Relations Act, as amended, 29 U.S.C. § 151, et seq., hereinafter called the Act. Appeal is taken pursuant to 28 U.S.C. § 1291. We affirm.

---

* Honorable Robert J. Kelleher, United States District Judge for the Central District of California, sitting by designation.

1. In addition to the consolidated appeals from the District Court's orders finding appellants guilty of civil and criminal contempts which are at issue here, the unfair labor practice case before the NLRB arising out of this controversy proceeded separately to final hearing and decision. San Francisco

California Newspapers, Inc., doing business as San Rafael Independent Journal (Journal), is engaged at San Rafael, California, in publishing a daily newspaper of general circulation in Marin County called *The Independent Journal*. Jurisdictional requirements of the Act with respect to gross revenues and interstate commerce are clearly present.

Since on or about January 7, 1970, a labor dispute had existed between the Journal and San Francisco Typographical Union No. 21 (Local 21), International Typographical Union, AFL–CIO.[1] In that month a strike was called against the newspaper and picketing began at the Journal's San Rafael publishing plant.

On February 11, 1970, the Regional Director of the National Labor Relations Board (the Board) filed with the District Court a petition for a temporary injunction pursuant to section 10(*l*) of the Act, against Local 21, Teamsters Local 85 and Teamsters Local 287. The petition was predicated upon a charge filed by the Journal that the named respondents were violating section 8(b)(4)(B) of the Act by engaging in secondary boycotts. Particularly they were picketing and inducing employees of various neutral employers at the Port of San Francisco to interfere with and prevent the delivery of newsprint to the Journal. After a hearing on February 13, 1970, at which the respondents presented no evidence, a temporary injunction was issued against all respondents enjoining further picketing at the pier and further acts designed to cause the neutral employers to refuse delivery of newsprint. On February 13, 1970, a Deputy United States Marshal served a copy of a Temporary Restraining Order

---

Typographical Union No. 21, 188 N.L.R.B. No. 108, 76 L.R.R.M. 1627 (1971). Local 21 and certain of its officers were cited for civil contempt in a companion case. The Board petitioned this court for enforcement of its order and Local 21 appealed the civil contempt citation. Those two appeals were consolidated, argued and decided by this court in NLRB v. San Francisco Typographical Union No. 21, 465 F.2d 53 (9th Cir. 1972).

identical with the Temporary Injunction on Longshoremen's Union, Local 10 which represented longshore employees at the Port of San Francisco. The injunction was based upon a finding that all three locals had engaged in a joint secondary boycott plan.

On April 28, 1970, the Board filed a second petition charging that Local 21 was conducting illegal secondary boycott activities at entrances to various retail stores in the vicinity to induce the public not to patronize the stores because they were advertising in the Journal. Local 21 stipulated that it would not contest the facts charged, waived a hearing and consented to the issuance of an injunction forthwith as prayed for. The court considered the petition and issued the injunction on April 28, 1970.

Both the February 13 injunction and that of April 28 were directed to the named respondents and "their officers, representatives, agents, servants, employees, attorneys, and all members, persons and other labor organizations acting in concert or participation with them or any of them."

Notwithstanding the April 28 injunction Local 21 continued to picket the retail stores in substantially the same way. On May 28, 1970, after hearing, the court found Local 21 and certain of its officers and agents including its vice-president DeMartini and organizer Abrams in civil contempt and directed that they purge themselves, inter alia, by fully complying with the injunction order. The court retained jurisdiction for the purpose of imposing a compensatory fine and considering a compliance fine.

Despite the civil contempt order, the tempo of illegal activities in violation of both injunctions increased, with other locals participating. These included Longshoremen's Local No. 10; Teamsters No. 70 and James R. Muniz, its president; and Teamsters No. 85 and Timothy Richardson, its business manager. The effort broadened to boycott or quarantine San Rafael and all of Marin County, curtailing deliveries of all supplies, causing traffic tie-ups and attempting to prevent delivery trucks from entering exit ramps from main highways to enter the city.

On October 10, 1970, the petition in the present case was filed seeking adjudication in civil and criminal contempt for violations of both the February 13 injunction and that of April 28. At the outset of the hearing in the District Court the criminal and the civil cases were severed with the criminal to be tried first. A request for a jury trial in the criminal case was denied. On December 24, 1970, at the close of the hearing the District Court determined that the allegations of the petition had been proved beyond a reasonable doubt with respect to union appellants Local 21, Teamsters Local 70 and Teamsters Local 85, and individual appellants Abrams, Muniz and Richardson, and that those appellants were guilty of criminal contempt. The court also found that the allegations of civil contempt had been established by a preponderance of the evidence as to all of those guilty of criminal contempt, plus Longshoremen's Local 10 and individual appellant DeMartini. The order of December 24 with respect to the civil action contains certain standard purgation requirements in the way of notices, and imposes a compliance fine of $7,500 a day against the unions and $100 per day against individual appellants for each day such individual fails to comply with the order. Finally, it retains jurisdiction for the purpose of imposing a compensatory fine.

In the criminal case a fine was levied against each of the three unions in the sum of $25,000 with a provision for remission of $15,000 of each fine if the court is satisfied at the end of one year with the appellants' compliance with the court's orders. Sentence of individual defendants was suspended and each was put on probation for one year. If probation was violated, each would subject himself to the power of the court to impose a sentence of imprisonment up to, but not exceeding, six months. A com-

pensatory fine was later imposed in the sum of $21,208.15 in the civil proceeding.

■■ Appellants raise a number of questions directed at the sufficiency and admissibility of evidence adduced during the proceeding, the inadequacy of the language of the temporary injunctions to put appellants upon notice of the activities within the scope of the injunctions, and the technical deficiency of certain of the pleadings. We have examined each in view of the importance of the proceeding and find that each is without substantial merit. Without detailing the evidence, which was voluminous, it clearly justified and supported the court's findings as to both criminal and civil contempts. The language of the injunctions was abundantly sufficient. Appellants were represented by counsel and no request for clarification was made. On the contrary appellants through their house papers boasted they were going to continue despite the court's injunctions. The same applies to the argument of the lack of precision of the allegations of the petition for an adjudication of criminal contempt. Appellants and their attorneys were fully apprised of the charges; they deliberately chose to risk not to obey them.

■ Where the purpose of issuing the citation for contempt is remedial in scope in order to enforce compliance with the court's order, the contempt is civil. Shillitani v. United States, 384 U.S. 364, 368–370, 86 S.Ct. 1531, 16 L. Ed.2d 622 (1966). In such cases a jury trial is not required. *Shillitani, supra*; Cheff v. Schnackenberg, 384 U.S. 373, 377, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966). No request for a jury trial was made in the civil contempt cases here. Where a fine is imposed or the purpose is punishment, the contempt is criminal. Penfield Co. of California v. SEC, 330 U.S. 585, 590–591, 67 S.Ct. 918, 91 L.Ed. 1117 (1947); Nye v. United States, 313 U.S. 33, 61 S.Ct. 810, 85 L.Ed. 1172 (1941). It is from the criminal contempt proceedings which imposed fines and probation that complaint is made of the denial of a jury trial.

■■ The court has jurisdiction to grant injunctive relief or temporary restraining orders in order to protect the public welfare or preserve the status quo pending a hearing or to enforce its orders. We pointed out in San Francisco-Oakland Newspaper Guild v. Kennedy, 412 F.2d 541, 544, 545 n. 3 (9th Cir. 1969):

> "All that is required under Sec. 10($l$) for a regional director to petition for such an injunction is reasonable cause to believe an unfair labor practice is being committed. The preliminary injunction should be granted by the court if the court finds that the factual allegations and the propositions of law underlying the regional director's petition are not insubstantial and frivolous so that he has reasonable cause for believing the Act has been violated, and if the court finds that injunctive relief is appropriate. On appeal, review is limited to a determination of whether the district court's findings are clearly erroneous.
>
> . . . . . .
>
> "Neither the district court nor this court is called upon to decide whether in fact a violation of the Act has been committed; the ultimate determination with respect to this question is reserved exclusively for the Board, subject to review by the courts of appeals pursuant to Sec. 10(e) and (f) of the Act . . . ."

The court must also have the power to enforce its orders if the Act is to be effective. Madden v. Grain Elevator, Flour & Feed Mill Workers, 334 F.2d 1014 (7th Cir. 1964), cert. denied, 379 U.S. 967, 85 S.Ct. 661, 13 L.Ed.2d 560 (1965); Evans v. Typographical Union, 81 F.Supp. 675 (S.D.Ind.1948).

Here the District Court, acting upon the petition of the Board, did grant injunctive relief under Section 10($l$) of

the Act, 29 U.S.C. § 160(*l*).[2]. When that injunctive relief was disregarded civil sanctions were imposed and when the court's orders were willfully flaunted and disobeyed criminal penalties followed.

In support of their contention that they were erroneously denied a jury trial, appellants rely upon 18 U.S.C. § 3692, which reads as follows:

> "In all cases of contempt arising under the laws of the United States governing the issuance of injunctions or restraining orders in any case involving or growing out of a labor dispute, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the State and district wherein the contempt shall have been committed."

Appellants acknowledge that the language represents a codification of the Norris-LaGuardia Act, in which the language granting contempt powers was originally limited to "all cases arising under this [Norris-LaGuardia] Act." Sec. 11, 29 U.S.C. § 111. *See* United States v. United Mine Workers, 330 U.S. 258, 298, 67 S.Ct. 677, 91 L.Ed. 884 (1947). It is argued that a revision of 1948 (Act of June 25, 1948, ch. 645, 62 Stat. 701–02, 844), which provided that the contempt power extended to "all cases . . . arising under the laws of the United States . . .", necessarily is all inclusive and thus envelops within its scope the present NLRA controversy. Thus, the argument concludes, a jury is required if requested.

■■ The thesis of appellants is too broad. Section 3692 does not stop when it refers to "all cases of contempt arising under the laws of the United States . . . ." It limits the definition by adding after the words "laws of the United States," the words "governing the issuance of injunctions or restraining orders in any case involving or growing out of a labor dispute." The purposes of the Norris-LaGuardia Act to limit and restrict the equitable powers of the courts to intervene in labor disputes between private employers and unions are not the same as the powers involved in the administrative scheme of the Labor Management Relations Act and its amendments. There is no reason to believe that Congress intended its grant of equitable powers to district courts as embodied in section 10(*l*) of the Act, 29 U.S.C. § 160(*l*), to be repealed by the recodification of section 11 of the Norris-LaGuardia Act, 29 U.S.C. § 111, into 18 U.S.C. § 3692. Brotherhood of Locomotive Firemen & Enginemen v. Bangor & Aroostook R. R. Co., 127 U.S.App.D.C. 23, 380 F.2d 570, 580, cert. denied, 389 U.S. 327, 88 S.Ct. 437, 19 L.Ed.2d 560 (1967); Madden v. Grain Elevator, Flour & Feed Workers, 334 F.2d 1014, 1020 (7th Cir. 1964). *See* Schauffler v. United Association of Journeymen, 230 F.2d 572 (3d Cir.), cert. denied, 352 U.S. 825, 77 S.Ct. 37, 1 L.Ed.2d 48 (1956); NLRB v. Red Arrow Freight Lines, 193 F.2d 979 (5th Cir. 1952).

■ Although the authorities cited pertain principally to civil contempts we hold to the view that the jurisdiction of the district courts to enforce their orders made under section 10(*l*) of the Act applies as well to criminal contempts, and that a jury trial is not compelled by virtue of the provisions of 18 U.S.C. § 3692.

■ Having thus concluded, it remains necessary to consider appellants' contention that the court erred in not summoning a jury upon request because of the seriousness of the violations charged and the resulting weight of the

2. "Whenever it is charged that any person has engaged in an unfair labor practice . . . the officer or regional attorney . . . shall . . . petition any United States district court . . . for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter. Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper, notwithstanding any other provision of law . . . ." 29 U.S.C. § 160(*l*).

penalties imposed. The trial court imposed two penalties in the criminal proceeding. As to the individuals it found guilty of criminal contempt, it suspended sentence and placed them on probation for one year, determining that if the condition of probation was broken they would subject themselves to the power of the court to impose a sentence of imprisonment of "up to but not exceeding, six months." It appears well established that jury trials are not constitutionally required in those cases where the penalty does not exceed six months' imprisonment. Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L. Ed.2d 522 (1968); Cheff v. Schnackenberg, 384 U.S. 373, 86 S.Ct. 1523, 16 L. Ed.2d 629 (1966); United States v. Barnett, 376 U.S. 681, 84 S.Ct. 984, 12 L.Ed.2d 23 (1964); Green v. United States, 356 U.S. 165, 78 S.Ct. 632, 2 L. Ed.2d 672 (1958). *See also* Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).

 *Cheff, supra,* was an instance of criminal contempt of an order of the Court of Appeals of the Seventh Circuit arising out of proceedings before the Federal Trade Commission. Cheff was found guilty and sentenced to six months' imprisonment. His petition for certiorari was granted with review limited to the question whether after a denial of a demand for a jury, a sentence of imprisonment of six months was constitutionally permissible under Article III and the Sixth Amendment.[3] The Court held that it was. It stated that it was "constrained to view the proceed-

ings" as "equivalent to a procedure to prosecute a petty offense" which under its decisions did not require a jury trial.[4] Clearly, then, it appears that sentences of imprisonment for a term of six months or less are neither constitutionally impermissible nor proscribed by the Supreme Court under its supervisory power over the inferior federal courts. We therefore hold that the criminal penalties meted out to the individuals here in the form of suspended sentences and probation are not constitutionally invalid.

As to the appellant unions (Local 21, Local 85 and Local 70), each had imposed upon it a fine of $25,000. Payment of $15,000 of that sum was suspended for one year and was then to be remitted to the union upon a determination by the court that the union had not engaged in any further violations of injunction orders. The unions contend here that the amount of the fines establish them as other than "petty" in nature and therefore the denial of their requests for a jury trial was erroneous. The basis of this argument is that the full text of 18 U.S.C. § 1(3) provides:

"Any misdemeanor, the penalty for which does not exceed imprisonment for a period of six months or a fine of not more than $500, or both, is a petty offense."

Since the Court in *Cheff* relied upon this statute for its characterization of a six months' maximum imprisonment as being "petty," appellants argue that the statute must necessarily determine the $500 fine as being the maximum fine which could permissibly be characterized

---

3. "The Trial of all Crimes, except in Cases of Impeachment, shall be by jury . . . ." U.S.Const., art. III, § 2.

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ." *Id.,* amend. VI.

4. The Court referred to a portion of 18 U. S.C. § 1 (1964 ed.), " '[a]ny misdemeanor, the penalty for which does not exceed imprisonment for a period of six months' is a 'petty offense.' " 384 U.S. at 379, 86 S.Ct. at 1526.

It also concluded its opinion by an expression of its point of view in recognition of its responsibility for "effective administration" of the federal courts, stating:

"Therefore, in the exercise of the Court's supervisory power and under the peculiar power of the federal courts to revise sentences in contempt cases, we rule further that sentences exceeding six months for criminal contempt may not be imposed by federal courts absent a jury trial or waiver thereof." *Id.* at 380, 86 S.Ct. at 1526.

as "petty" and thus imposed without a jury trial or a waiver of jury. Although there is a syllogistic allure in the argument, decisions subsequent to *Cheff* cast doubts upon the contention's validity. Bloom v. Illinois, *supra,* involved a conviction in an Illinois state court for criminal contempt and a sentence to imprisonment of 24 months as the penalty. The defendant's timely demand for a jury trial had been refused, and his conviction affirmed. Certiorari having been granted, 386 U.S. 1003, 87 S.Ct. 1346, 18 L.Ed.2d 431 (1967), the Court reexamined the limitations of the rule that criminal contempts could be tried without a jury. Duncan v. Louisiana, *supra,* decided the same day as *Bloom* had held that the right to a jury trial extended to the states.

In *Bloom,* the Court recounted that in Green v. United States, *supra,* it had held to be constitutionally permissible summary trials without a jury in all contempt cases, based upon common law rules and upon the concept that such power in the courts was considered essential to the proper and effective administration of justice. It then pointed out that *Barnett, supra,* had signalled a possible change of view in the event of a severe punishment in a criminal contempt case. Two years later, in 1966, *Cheff, supra,* held that six months' imprisonment was a petty and not a severe punishment and did not require a jury. The Court in *Bloom* stated that it "ac-

cept[s] the judgment of *Barnett* and *Cheff* that criminal contempt is a petty offense unless the punishment makes it a serious one." [5] 391 U.S. at 198, 88 S. Ct. at 1480. As to when the offense ceases to be "petty" and becomes "serious" the Court concluded:

"In *Duncan* we have said that we need not settle 'the exact location of the line between petty offenses and serious crimes' but that 'a crime punishable by two years in prison is . . . a serious crime and not a petty offense.'" *Id.* at 211, 88 S.Ct. at 1487.

In this plethora of discussion establishing and reexamining rules as to when a jury trial is required, there is hardly a word spoken about the line at which the measure in dollars of a fine causes the contempt to cease being "petty" and to become "serious." Certainly we cannot understand *Cheff* as holding that the sum of $500 constitutes that line simply because it uses 18 U.S.C. § 1(3) to express a point of division between permissible and impermissible terms of imprisonment at which a jury is required.[6] A deprivation of his liberty for a period of more than six months could certainly be serious to any individual, whereas a fine of $500 to a large corporation or to a large union might have no deterrent or punitive effect at all.[7]

 ▆▆▆▆ A distillate of the holdings of the more modern decisions of the Su-

5. The opinion in *Bloom* does not comment on the statement in *Cheff* that "sentences exceeding six months for criminal contempt may not be imposed by federal courts absent a jury trial or waiver thereof." 384 U.S. at 380, 88 S.Ct. at 1526. The implication is that such sentences are considered serious.

6. In *Duncan,* the Court pointed out that because there was no statute involved in *Cheff* defining the penalty for criminal contempt in terms of months or years of imprisonment, the Court was forced to look at the penalty actually imposed as the best evidence of the seriousness of the offense. 391 U.S. at 162 n. 35, 88 S.Ct. 1444, 20 L.Ed.2d 491.

7. It is interesting to note that in *Cheff,* his codefendant Holland Furnace Co. was fined $100,000. Both Cheff and the corporation petitioned for certiorari. The petition of Cheff was granted and in the opinion the question of petty versus non-petty measured by length of imprisonment was discussed at length. The petition for certiorari of the corporation was denied and the Court in *Cheff* did not discuss a measure of dollars which might define a fine as being petty or serious.

preme Court on the question of the right to trial by jury in a criminal proceeding leads us to believe that if there is an existing statute which authorizes the imposition of a penalty of more than six months imprisonment, the penalty is not a "petty" one but a "serious" one and a jury or waiver thereof is required. Duncan v. Louisiana, *supra*. If the criminal proceeding is in contempt with no statutory penalty but an open-ended penalty resting on the court's discretion, a hindsight determination is made upon review to determine whether the offense was "petty" or "serious" based upon the severity of the punishment. If the penalty imposed is six months' imprisonment or less, then the offense was a "petty" one and no jury was required. Cheff v. Schnackenberg, *supra;* Duncan v. Louisiana, 391 U.S. 145, 162 n.35, 88 S.Ct. 1444, 20 L.Ed.2d 491.

 Where the contemnor is a corporation, association, union or other artificial person and a fine is the ordinary punishment, the rules become obscure. The Court has never said that while a $500 fine marks the contempt as being "petty" under 18 U.S.C. § 1(3) with no jury required, a fine of $501 labels it as "serious" with the necessary consequence that a jury must have been empaneled.[8] A fine which might under all of the circumstances constitute only a slap on the wrist of one artificial entity might be a "serious" penalty to another.[9] Accordingly, we can go no further than to decide this case, and upon that basis we do not find that the judgment of the District Court was constitutionally prohibited.

The judgment is therefore affirmed.

---

8. We note United States v. R. L. Polk & Co., 438 F.2d 377 (6th Cir. 1971), to the contrary but are not persuaded by it.

9. The six month-$500 provision of 18 U.S.C. § 1(3) defining the limits of "petty" offenses became law in 1930. Act of Dec. 16, 1930, ch. 15, 46 Stat. 1029. While the value of personal freedom has not depreciated in the intervening period the same cannot be said either of the value of the dollar or of the growth in dollars of the assets of large organizations.